Mb. Justice White
delivered the opinion of^ej3©trr-tr''
Appellants, approximately 64 in number, are members of the faculty, staff and student body of the University of Washington who brought this class action asking for a judgment declaring unconstitutional two Washington statutes requiring the execution of two different oaths by state employees and for an injunction against the enforcement of these statutes by appellees, the President of the University, members of the Washington State Board of Regents and the State Attorney General.
The statutes under attack are Chapter 377, Laws of 1955, and Chapter 103, Laws of 1931, both of which require employees of the State of Washington to take the oaths prescribed in the statutes as a condition of their employment. The 1931 legislation applies only to teachers, who, upon applying for a license to teach or renewing an existing contract, are required to subscribe to the following:
“I solemnly swear (or affirm) that I will support the constitution and laws of the United States of *494 America and of the State of Washington, and will by precept and example promote respect for the flag and the institutions of the United States of America and the State of Washington, reverence for law and order and undivided allegiance to the government of the United States.” Wash. Laws 1931, c. 103.
The oath requirements of the 1955 Act, Wash. Laws 1955, c. 377, applicable to all state employees, incorporate various provisions of the Washington Subversive Activities Act of 1951, which provides generally that “[n]o subversive person, as defined in this act, shall be eligible for employment in, or appointment to any office, or any position of trust or profit in the government, or in the administration of the business, of this state, or of any county, municipality, or other political subdivision of this state.” Wash. Rev. Code § 9.81.060. The term “subversive person” is defined as follows:
“ ‘Subversive person’ means any person who commits, attempts to commit, or aids in the commission, or advocates, abets, advises or teaches by any means any person to commit, attempt to commit, or aid in the commission of any act intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the state of Washington, or any political subdivision of either of them by revolution, force, or violence; or who with knowledge that the organization is an organization as described in subsections (2) and (3) hereof, becomes or remains a member of a subversive organization or a foreign subversive organization.” Wash. Rev. Code § 9.81.010 (5).
The Act goes on to define at similar length and in similar terms “subversive organization” and “foreign subversive organization” and to declare the Communist Party a sub *495 versive organization and membership therein a subversive activity.[1]
On May 28, 1962, some four months after this Court’s dismissal of the appeal irf Nostrand v. Little, 368 U. S. 436, also a challenge to the 1955 oath,[2] the University *496 President, acting pursuant to directions of the Board of Regents, issued a memorandum to all University employees notifying them that they would be required to take an oath. Oath Form A[3] requires all teaching per *497 sonnel to swear to the oath of allegiance set out above, to aver that they have read, are familiar with and understand the provisions defining “subversive person” in the Subversive Activities Act of 1951 and to disclaim being a subversive person and membership in the Communist Party or any other subversive or foreign subversive organization. Oath Form B[4] requires other state employees to subscribe to all of the above provisions except the 1931 oath. Both forms provide that the oath and *498 statements pertinent thereto are made subject to the penalties of perjury.
Pursuant, to 28 U. S. C. §§ 2281, 2284, a three-judge District Courfi-was convened and a trial was had. That court determined that the 1955 oath and underlying statutory provisions did not infringe upon any First and Fourteenth Amendment'freedoms and. .were not unduly vague. In respect to the claim that the 1931 oath was unconstitutionally vague on its face,'the court held that although the challenge raised a substantial constitutional issue, adjudication was not proper in the absence of proceedings in the state courts which might resolve or avoid the constitutional issue. The action was dismissed. 215 F. Supp. 439. We noted probable jurisdiction because of-the public importance of this type of legislation and the recurring serious constitutional questions which it presents. 375 U. S. 808. We reverse.
I.
Appellants contend in this Court that the oath requirements and the statutory provisions on which they are based are invalid on their face because their language is unduly vague, uncertain and broad. We agree with this contention and therefore, without reaching the numerous other contentions pressed upon us, confine our considerations to that particular question.[5]
In Cramp v. Board of Public Instruction, 368 U. S. 278, the Court invalidated an oath requiring teachers and other employees of the State to swear that they had never lent their “aid, support, advice, counsel or influence to the Communist Party” because the oath was lacking in *499 “terms susceptible of objective measurement” and failed to inform as to what the State commanded or forbade. The statute therefore fell within the compass of those decisions of the Court holding that a law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law. Connally v. General Construction Co., 269 U. S. 385; Lanzetta v. New Jersey, 306 U. S. 451; Joseph Burstyn, Inc., v. Wilson, 343 U. S. 495; United States v. Cardiff, 344 U. S. 174; Champlin Refining Co. v. Corporation Comm’n of Oklahoma, 286 U. S. 210.
The oath required by the 1955 statute suffers from similar infirmities. A teacher must swear that he is not a subversive person: that he is not one who commits an act or who advises, teaches, abets or advocates by any means another person to commit or aid in the commission of any act intended to overthrow or alter, or to assist the overthrow or alteration, of the constitutional form of government by revolution, force or violence. A subversive organization is defined as one which engages in or assists activities intended to alter or overthrow the Government by force or violence or which has as a purpose the commission of such acts. The Communist Party is declared in the statute to be a subversive organization, that is, it is presumed that the Party does and will engage in activities intended to overthrow the Government.[6] Persons required to swear they under *500 stand this oath may quite reasonably conclude that any person who aids the Communist Party or teaches or advises known members of the Party is a subversive person because such teaching or advice may now or at some future date aid the activities of the Party. Teaching and advising are clearly acts, and one cannot confidently assert that his counsel, aid, influence or support which adds to the resources, rights and knowledge of the Communist Party or its members does not aid the Party in its activities, activities which the statute tells us are all in furtherance of the stated purpose of overthrowing the Government by revolution, force, or violence. The questions put by the Court in Cramp may with equal force be asked here. Does the statute reach endorsement or support for Communist candidates for office? Does it reach a lawyer who represents the Communist Party or its members or a journalist who defends constitutional rights of the Communist Party or its members or anyone who supports any cause which is likewise supported by Communists or .the Communist Party? The susceptibility of the statutory language to require forswearing of an undefined variety of “guiltless knowing behavior” is what the Court condemned in Cramp. This statute, like the one at issue in Cramp, is unconstitutionally vague.[7]
*501 The Washington statute suffers from additional difficulties on vagueness grounds. A person is subversive not only if he himself commits the specified acts but if he abets or advises another in aiding a third person to commit an act which will assist yet a fourth person in the overthrow or alteration of constitutional government. The Washington Supreme Court has said that knowledge is to be read into every provision and we accept this construction. Nostrand v. Balmer, 53 Wash. 2d 460, 483-484, 335 P. 2d 10, 24; Nostrand v. Little, 58 Wash. 2d 111, 123-124, 361 P. 2d 551, 559. But what is it that the Washington professor must "know”? Must he know that his aid or teaching will be used by another and that the person aided has the requisite guilty intent or is it sufficient that he know that his aid or teaching would or might be useful to others in the commission of acts intended to overthrow the Government? Is it subversive activity, for example, to attend and participate in international conventions of mathematicians and exchange views with scholars from Communist countries? What about the editor of a scholarly journal who analyzes and criticizes the manuscripts of Communist scholars submitted for publication? Is selecting outstanding scholars from Communist countries as visiting professors and advising, teaching, or consulting with them at the University of Washington a subversive activity if such scholars are known to be Communists, or regardless of their affiliations, regularly teach students *502 who are members of the Communist Party, which by statutory definition is subversive and dedicated to the overthrow of the Government?
The Washington oath goes beyond overthrow or alteration by force or violence. It extends to alteration by “revolution” which, unless wholly redundant and its ordinary meaning distorted, includes any rapid or fundamental change. Would, therefore, any organization or any person supporting, advocating or teaching peaceful but far-reaching constitutional amendments be engaged in subversive, activity? Could one support the repeal of the Twenty-second Amendment or participation by this country in a world government? [8]
*503 II.
We also conclude that the 1931 oath offends due process because of vagueness. The oath exacts a promise that the affiant will, by precept and example, promote respect for the flag and the institutions of the United States and the State of Washington. The range of activities which are or might be deemed inconsistent with the required promise is very wide indeed. The teacher who refused to salute the flag or advocated refusal because of religious beliefs might well be accused of breaching his promise. Cf. West Virginia State Board of Education v. Barnette, 319 U. S. 624. Even criticism of the design or color scheme of the state flag or unfavorable comparison of it with that of a sister State or foreign country could be deemed disrespectful and therefore violative of the oath. And what are “institutions” for the purposes of this oath? Is it every “practice, law, custom, etc., which is a material and persistent element in the life or culture of an organized social group” or every “established society or corporation,” every “establishment, especially] one of a public character”?[9] The oath may prevent a professor from criticizing his state judicial system or the Supreme Court or the institution of judicial review. Or it might be deemed to proscribe advocating the abolition, for example, of the Civil Rights Commission, the House Committee on Un-American Activities, or foreign aid.
It is likewise difficult to ascertain what might be done without transgressing the promise to “promote . . . undivided allegiance to the government of the United States.” It would not be unreasonable for the serious-minded oathtaker to conclude that he should dispense with lectures voicing far-reaching criticism of any old or new policy followed by the Government of the United *504 States. He could find it questionable under this language to ally himself with any interest group dedicated to opposing any current public policy or law of the Federal Government, for if he did, he might well be accused of placing loyalty to the group above allegiance to the United States.
Indulging every presumption of a narrow construction of the provisions of the 1931 oath, consistent, however, with a proper respect for the English language, we cannot say that this oath provides an ascertainable standard of conduct or that it does not require more than a State may command under the guarantees of the First and Fourteenth Amendments.
As in Cramp v. Board of Public Instruction, “[t]he vice of unconstitutional vagueness is further aggravated where, as here, the statute in question operates to inhibit the exercise of individual freedoms affirmatively protected by the Constitution.” 368 U. S. 278, 287. We are dealing with indefinite statutes whose terms, even narrowly construed, abut upon sensitive areas of basic First Amendment freedoms. The uncertain meanings of the oaths require the oath-taker — teachers and public servants — to “steer far wider of the unlawful zone,” Speiser v. Randall, 357 U. S. 513, 526, than if the boundaries of the forbidden areas were clearly marked. Those with a conscientious regard for what they solemnly swear or affirm, sensitive to the perils posed by the oath’s indefinite language, avoid the risk of loss of employment, and perhaps profession, only by restricting their conduct to that which is unquestionably safe. Free speech may not be so inhibited.[10] *505 Smith v. California, 361 U. S. 147; Stromberg v. California, 283 U. S. 359, 369. See also Herndon v. Lowry, 301 U. S. 242; Thornhill v. Alabama, 310 U. S. 88; and Winters v. New York, 333 U. S. 507.
1 — 1 h-[ h-i
The State labels as wholly fanciful the suggested possible coverage of the two oaths. It may well be correct, but the contention only emphasizes the difficulties with the two statutes; for if the oaths do not reach some or any of the behavior suggested, what specific conduct do the oaths cover? Where does fanciful possibility end and intended coverage begin?
It will not do to say that a prosecutor's sense of fairness and the Constitution would prevent a successful perjury prosecution for some of the activities seemingly embraced within the sweeping statutory definitions. The hazard of being prosecuted for knowing but guiltless behavior nevertheless remains. “It would be blinking reality not to acknowledge that there are some among us always ready to affix a Communist label upon those whose ideas they violently oppose. And experience teaches us that prosecutors too are human.” Cramp, supra, at 286-287. Well-intentioned prosecutors and judicial safeguards do not neutralize the vice of a vague law. Nor should we encourage the casual taking of oaths by upholding the discharge or exclusion from public employ *506 ment of those with a conscientious and scrupulous regard for such undertakings.
It is further argued, however, that, notwithstanding the uncertainties of the 1931 oath and the statute on which it is based, the oath does not offend due process because the vagaries are contained in a promise of future conduct, the breach of which would not support a conviction for perjury. Without the criminal sanctions, it is said, one need not fear taking this oath, regardless of whether he understands it and can comply with its mandate, however understood. This contention ignores not only the effect of the oath on those who will not solemnly swear unless they can do so honestly and without prevarication and reservation, but also its effect on those who believe the written law means what it says. Oath Form A contains both oaths, and expressly requires that the signer “understand that this statement and oath are made subject to the penalties of perjury.” Moreover, Wash. Rev. Code §9.72.030 provides that “[e]very person who, whether orally or in writing . . . shall knowingly swear falsely concerning any matter whatsoever” commits perjury in the second degree. Even if it can be said that a conviction for falsely taking this oath would not be sustained, the possibility of a prosecution cannot be gainsaid. The State may not require one to choose between subscribing to an unduly vague and broad oath, thereby incurring the likelihood of prosecution, and conscientiously refusing to take the oath with the consequent loss of employment, and perhaps profession, particularly where “the free dissemination of ideas may be the loser.” Smith v. California, 361 U. S. 147, 151. “It is not the penalty itself that is invalid but the exaction of obedience to a rule or standard that is so vague and indefinite as to be really no rule or standard at all.” Champlin Refg. Co. v. Corporation Comm’n of Oklahoma, 286 U. S. 210, 243; cf. Small Co. v. American Refg. Co., 267 U. S. 233.
*507 IV.
We are asked not to examine the 1931 oath statute because, although on the books for over three decades, it has never been interpreted by the Washington courts. The argument is that ever since Railroad Comm’n v. Pullman Co., 312 U. S. 496, the Court on many occasions has ordered abstention where state tribunals were thought to be more appropriate for resolution of complex or unsettled questions of local law. A. F. L. v. Watson, 327 U. S. 582; Spector Motor Service v. McLaughlin, 323 U. S. 101; Harrison v. NAACP, 360 U. S. 167. Because this Court ordinarily accepts the construction given a state statute in the local courts and also presumes that the statute will be construed in such a way as to avoid the constitutional question presented, Fox v. Washington, 236 U. S. 273; Poulos v. New Hampshire, 345 U. S. 395, an interpretation of the 1931 oath in the Washington courts in light of the vagueness attack may eliminate the necessity of deciding this issue.
We are not persuaded. The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court’s equity powers. Ascertainment of whether there exist the “special circumstances,” Propper v. Clark, 337 U. S. 472, prerequisite to its application must be made on a case-by-case basis. Railroad Comm’n v. Pullman Co., 312 U. S. 496, 500; NAACP v. Bennett, 360 U. S. 471.[11] Those special circumstances are not present here. We doubt, in the first place, that a construction of the oath provisions, in light of the vagueness challenge, would *508 avoid or fundamentally alter the constitutional issue raised in this litigation. See Chicago v. Atchison, T. & S. F. R. Co., 357 U. S. 77. In the bulk of abstention cases in this Court,[12] including those few cases where vagueness was at issue,[13] the unsettled issue of state law principally *509 concerned the applicability of the challenged statute to a certain person or a defined course of conduct, whose resolution in a particular manner would eliminate the constitutional issue and terminate the litigation. Here the *510 uncertain issue of state law does not turn upon a choice between one or several alternative meanings of a state statute. The challenged oath is not open to one or a few interpretations, but to an indefinite number. There is no uncertainty that the oath applies to the appellants and the issue they raise is not whether the oath permits them to engage in certain definable activities. Rather their complaint is that they, about 64 in number, cannot understand the required promise, cannot define the range of activities in which they might engage in the future, and do not want to forswear doing all that is literally or arguably within the purview of the vague terms. In these circumstances it is difficult to see how an abstract construction of the challenged terms, such as precept, example, allegiance, institutions, and the like, in a declaratory judgment action could eliminate the vagueness from these terms. It is fictional to believe that anything less than extensive adjudications, under the impact of a variety of factual situations, would bring the oath within the bounds of permissible constitutional certainty. Abstention does not require this.
Other considerations also militate against abstention here. Construction of this oath in the state court, abstractly and without reference to concrete, particularized situations so necessary to bring into focus the impact of the terms on constitutionally protected rights of speech and association, Ashwander v. Tennessee Valley Authority, 297 U. S. 288, 341 (Brandeis, J., concurring), would not only hold little hope of eliminating the issue of vagueness but also would very likely pose other constitutional issues for decision, a result not serving the abstention-justifying end of avoiding constitutional adjudication.
We also cannot ignore that abstention operates to require piecemeal adjudication in many courts, England v. Louisiana State Board of Medical Examiners, 375 U. S. 411, thereby delaying ultimate adjudication on the merits *511 for an undue length of time, England, supra; Spector, supra; Government & Civic Employees Organizing Committee v. Windsor, 353 U. S. 364,[14] a result quite costly where the vagueness of a state statute may inhibit the exercise of First Amendment freedoms. Indeed the 1955 subversive person oath has been under continuous constitutional attack since at least 1957, Nostrand v. Balmer, 53 Wash. 2d 460, 463, 335 P. 2d 10, 12, and is now before this Court for the third time. Remitting these litigants to the state courts for a construction of the 1931 oath would further protract these proceedings, already pending for almost two years, with only the likelihood that the case, perhaps years later, will return to the three-judge District Court and perhaps this Court for a decision on the identical issue herein decided. See Chicago v. Atchison, T. & S. F. R. Co., 357 U. S. 77, 84; Public Utilities Comm’n of Ohio v. United Fuel Co., 317 U. S. 456.[15] Meanwhile, where the vagueness of the statute deters constitutionally protected conduct, “the free dissemination of ideas may be the loser.” Smith v. California, 361 U. S. 147, 151.
V.
As in Cramp v. Board of Public Instruction, supra, we do not question the power of a State to take proper measures safeguarding the public service from disloyal con *512 duct. But measures which purport to define disloyalty must allow public servants to know what is and is not disloyal. “The fact . . . that a person is not compelled to hold public office cannot possibly be an excuse for barring him from office by state-imposed criteria forbidden by the Constitution.” Torcaso v. Watkins, 367 U. S. 488, 495-496.

Reversed.

 “ ‘Subversive organization’ means any organization which engages in or advocates, abets, advises, or teaches, or a purpose of which is to engage in or advocate, abet, advise, or teach activities intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the state of Washington, or of any political subdivision of either of them, by revolution, force or violence.” Wash. Rev. Code §9.81.010 (2).
“ ‘Foreign subversive organization’ means any organization directed, dominated or controlled directly or indirectly by a foreign government which engages in or advocates, abets, advises, or teaches, or a purpose of which is to engage in or to advocate, abet, advise, or teach, activities intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of the constitutional form of the government of the United States, or of the state of Washington, or of any political subdivision of either of them, and to establish in place thereof any form of government the direction and control of which is to be vested in, or exercised by or under, the domination or control of any foreign government, organization, or individual.” Wash. Rev. Code §9.81.010 (3).
“Communist party declared a subversive organization.
“The communist party is a subversive organization within the purview of chapter 9.81 and membership in the communist party is a subversive activity thereunder.” Wash. Rev. Code §9.81.083.

 Although the 1931 Act has not been the subject of previous challenge, an attack upon the 1955 loyalty statute was instituted by two of the appellants in the present ease, Professors Howard Nostrand and Max Savelle, who brought a declaratory judgment action in the Superior Court of the State of Washington asking that Chapter 377, 'Laws of 1955, be declared unconstitutional and that its enforcement be enjoined. The Washington Supreme Court held that one section was unconstitutional but severable from the rest of the Act, whose validity was upheld. Nostrand v. Balmer, 53 Wash. 2d 460, 335 P. 2d 10. On appeal to this Court the decision of the Washington court was vacated and the case remanded for a determination of whether employees who refused to sign the oath would be afforded a hearing at which they could explain or defend *496 the reasons for their refusal. Nostrand v. Little, 362 U. S. 474. The Washington Supreme Court held upon remand that since Professors Nostrand and Savelle were tenured professors the terms of their contracts and rules promulgated by the Board of Regents entitled them to a hearing. Nostrand v. Little, 58 Wash. 2d 111, 361 P. 2d 551. This Court dismissed a further appeal, Nostrand v. Little, 368 U. S. 436. The issue we find dispositive of the case at bar was not presented to this Court in the above proceedings.

 “Oath Form A
“STATE OF WASHINGTON

“Statement and Oath for Teaching Faculty of the University of Washington

“I, the undersigned, do solemnly swear (or affirm) that I will support the constitution and laws of the United States of America and of the state of Washington, and will by precept and example promote respect for the flag and the institutions of the United States of America and the state of Washington, reverence for law and order, and undivided allegiance to the government of the United States;
“I further certify that I have read the provisions of RCW 9.81.010 (2), (3), and (5); RCW 9.81.060; RCW 9.81.070; and RCW 9.81.083, which are printed on the reverse hereof; that I understand and am familiar with the contents thereof; that I am not a subversive person as therein defined; and
“I do solemnly swear (or affirm) that I am not a member of the Communist party or knowingly of any other subversive organization.
“I understand that this statement and oath are made subject to the penalties of perjury.
(SIGNATURE)
(title and department)
“Subscribed and sworn (or affirmed) to before me this day of.,19.
NOTARY PUBLIC IN AND FOR THE STATE OP WASHINGTON, RESIDING AT.
*497 “(To be executed in duplicate, one copy to be retained by individual.)
“NOTE: Those desiring to affirm may strike the words 'swear' and 'sworn to’ and substitute ‘affirm’ and ‘affirmed,’ respectively.”

 “Oath Form B
“STATE OF WASHINGTON

“Statement and Oath for Staff of the University of Washington Other Than Teaching Faculty

“I certify that I have read the provisions of RCW 9.81.010 (2), (3), and (5); RCW 9.81.060; RCW 9.81.070; and RCW 9.81.083 which are printed on the reverse hereof; that I understand and am familiar with the contents thereof; that I am not a subversive person as therein defined; and
“I do solemnly swear (or affirm) that I am not a member of the Communist party or knowingly of any other subversive organization.
“I understand that this statement and oath are made subject to the penalties of perjury.
(siGNAtube)
(TITLE AND DEPARTMENT OR OFFICE)
“Subscribed and sworn (or affirmed) to before me this... day of.,19.
NOTARY public IN AND FOR THE STATE OF WASHINGTON, RESIDING AT.
“(To be executed in duplicate, one copy to be retained by individual.)
“NOTE: Those desiring to affirm may strike the words ‘swear’ and ‘sworn to’ and substitute ‘affirm’ and ‘affirmed,’ respectively.”

 Since the ground we find dispositive immediately affects the professors and other state employees required to take the oath, and the interests of the students at the University in academic freedom are fully protected by a judgment in favor of the teaching personnel, we have no occasion to pass on the standing of the students to bring this suit.

 The drafters of the 1951 Subversive Activities Act stated to the Washington Legislature that “[t]he [Communist Party] dovetailed, nation-wide program is designed to . . . create unrest and civil strife, and impede the normal processes of state and national government, all to the end of weakening and ultimately destroying the United States as a constitutional republic and thereby facilitating the avowed Soviet purpose of substituting here a totalitarian dictatorship.” First Report of the Joint Legislative Fact-Finding Committee on Un-American Activities in Washington State, 1948, p. iv.

 The contention that the Court found no constitutional difficulties with identical definitions of subversive person and subversive organizations in Gerende v. Board of Supervisors, 341 U. S. 56, is without merit. It was forcefully argued in Gerende that candidates for state office in Maryland were required to take an oath incorporating a section of the Maryland statutes defining subversive person and organization in the identical terms challenged herein. But the Court rejected this interpretation of Maryland law and did not pass upon or approve the definitions of subversive person and organization contained in the Maryland statutes. Instead it made very clear that the judgment below was affirmed solely on the basis that the actual oath to be imposed under Maryland law requires one to swear that he is not a person who is engaged “ ‘in the attempt to overthrow the *501 government by force or violence,’ and that he is not knowingly a member of an organization engaged in such an attempt.” Id., at 66-57 (emphasis in original). The Court said: “At the bar of this Court the Attorney General of the State of Maryland declared that he would advise the proper authorities to accept an affidavit in these terms as satisfying in full the statutory requirement. Under these circumstances and with this understanding, the judgment of the Maryland Court of Appeals is Affirmed.’’ Id., at 57.

 It is also argued that § 2 of the Smith Act, 18 U. S. C. § 2385, upheld over a vagueness challenge in Dennis v. United States, 341 U. S. 494, proscribes the same activity in the same language as the Washington statute. This argument is founded on a misreading of § 2 and Dennis v. United States, supra.
That section provides:
“Whoever knowingly or willfully advocates, abets, advises, or teaches the duty, necessity, desirability, or propriety of overthrowing or destroying the government of the United States or the government of any State ... by force or violence . . . .”
The convictions under this provision were sustained in Dennis, supra, on the construction that the statute means “teaching and advocacy of action for the accomplishment of [overthrowing or destroying organized government] by language reasonably and ordinarily calculated to incite persons to such action ... as speedily as circumstances would permit.” Id., at 511-512. In connection with the vagueness attack, it was noted that “[t] his is a federal statute which we must interpret as well as judge. Herein lies the fallacy of reliance upon the manner in which this Court has treated judgments of state co.urts. . . .” Id., at 502.
In reversing convictions under this section in Yates v. United States, 354 U. S. 298, the Court made quite clear exactly what all the above terms do and do not proscribe: “[T]he Smith Act reaches only advocacy of action for the overthrow of government by force and violence.” Id., at 324.

 Webster’s New Int. Dictionary (2d ed.), at 1288.

 “The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system. A statute which upon its face ... is so vague and indefinite as to permit the punishment of *505 the fair use of this opportunity is repugnant to the guaranty of liberty contained in the Fourteenth Amendment.” Stromberg v. California. 283 U. S. 359, 369. “[Sjtatutes restrictive of or purporting to place limits to those [First Amendment] freedoms must be narrowly drawn to meet the precise evil the legislature seeks to curb . . . and . . . the conduct proscribed must be defined specifically so that the person or persons affected remain secure and unrestrained in their rights to engage in activities not encompassed by the legislation.” United States v. Congress of Industrial Organizations, 335 U. S. 106, 141-142 (Rutledge, J., concurring).

 “When the validity of a state statute, challenged under the United States Constitution, is properly for adjudication before a United States District Court, reference to the state courts for construction of the statute should not automatically be made.” NAACP v. Ben *508 nett, 360 U. S. 471. See also United States v. Livingston, 179 F. Supp. 9, 12-13 (D. C. E. D. S. C.), aff’d, Livingston v. United States, 364 U. S. 281: “Though never interpreted by a state court, if a state statute is not fairly subject to an interpretation which will avoid or modify the federal constitutional question, it is the duty of a federal court to decide the federal question when presented to it.” Shelton v. McKinley, 174 F. Supp. 351 (D. C. E. D. Ark.) (abstention inappropriate where there are no substantial problems of statutory construction and delay would prejudice constitutional rights); All American Airways v. Village of Cedarhurst, 201 F. 2d 273 (C. A. 2d Cir.); Sterling Drug v. Anderson, 127 F. Supp. 511, 513 (D. C. E. D. Tenn.).

 See, e. g., Railroad Comm’n of Texas v. Pullman Co., 312 U. S. 496; Chicago v. Fieldcrest Dairies, Inc., 316 U. S. 168; Spector Motor Service, Inc., v. McLaughlin, 323 U. S. 101; Alabama State Federation of Labor v. McAdory, 325 U. S. 450; American Federation of Labor v. Watson, 327 U. S. 582; Stainback v. Mo Hock Ke Lok Po, 336 U. S. 368; Shipman v. DuPre, 339 U. S. 321; Albertson v. Millard, 345 U. S. 242; Leiter Minerals, Inc., v. United States, 352 U. S. 220; Government & Civic Employees Organizing Committee, C. I. O., v. Windsor, 353 U. S. 364; City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U. S. 639.

 In Musser v. Utah, 333 U. S. 95, the appellants were convicted of committing “acts injurious to public morals.” The vagueness challenge to the statute, either as applied or on its face, was raised for the first time in oral argument before this Court, and the Court vacated the conviction and remanded for a determination of whether the conviction for urging persons to commit polygamy rested solely on this broad-challenged provision. In Albertson v. Millard, 345 U. S. 242, the Communist Party of the State of Michigan and its secretary sought to enjoin on several constitutional grounds the application to them of a state statute, five days after its passage, requiring registration, under pain of criminal penalties, of “any organization which is substantially directed, dominated or controlled by the Union of Soviet Socialist Republics or its satellites, or which . . . acts to further, the world communist movement” and *509 of members of such an organization. They argued that the definitions were vague and failed to inform them if a local Communist organization and its members were required to register. The lower court took judicial notice of the fact that the Communist Party of the United States, with whom the local party was associated, was a part of the world Communist movement dominated by the Soviet Union, and held the statute constitutional in all other respects. This Court vacated the judgment and declined to pass on the appellants’ constitutional claims until the Michigan courts, in a suit already pending, construed the statutory terms and determined if they required the local Party and its secretary, without more, to register. The approach was that the constitutional claims, including the one founded on vagueness, would be wholly eliminated if the statute, as construed by the state court, did not require all local Communist organizations without substantial ties to a foreign country and their members to register. Stated differently, the question was whether this statute applied to these plaintiffs, a question to be authoritatively answered in the state courts.
In Harrison v. NAACP, 360 U. S. 167, the NAACP and the NAACP Legal Defense and Education Fund sought a declaratory judgment and injunction on several constitutional grounds in respect to numerous recently enacted state statutes. The lower court enjoined the implementation of three statutes, including one provision on vagueness grounds, and ordered abstention as to two others, finding them ambiguous. This Court ordered abstention as to all the statutes, finding that they were all susceptible of constructions that would limit or eliminate their effect on the litigative and legal activities of the NAACP and construction might thereby eliminate the necessity for passing on the many constitutional questions raised. The vagueness issue, for example, would not require adjudication if the state courts found that the challenged provisions did not restrict the activities of the NAACP or require the NAACP to register. Unlike the instant case, the necessity for deciding the federal constitutional issues in the above and other abstention cases turned on whether the restrictions or requirements of an uncertain or unclear state statute were imposed on the persons bringing the action or on their activities as defined in the complaint.

 See Clark, Federal Procedural Reform and States’ Rights, 40 Tex. L. Rev. 211 (1961); Note, 73 Harv. L. Rev. 1358, 1363 (1960).

 “Where the disposition of a doubtful question of local law might terminate the entire controversy and thus make it unnecessary to decide a substantial constitutional question, considerations of equity justify a rule of abstention. But where, as here, no state court ruling on local law could settle the federal questions that necessarily remain, and where, as here, the litigation has already been in the federal courts an inordinately long time, considerations of equity require that the litigation be brought to an end as quickly as possible.” 317 U. S. 456, at 463.