**Walton Dacus HAINING, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,**

v.

**M. M. ROBERTS, Robert E. Carter, and Pat L. Gilliland, Defendants.**

**Civ. A. No. 4594.**

United States District Court,
S. D. Mississippi,
Jackson Division.

Dec. 29, 1970.

A. Spencer Gilbert, III, Jackson, Miss., for plaintiffs.

M. M. Roberts, Hattiesburg, Miss., James E. Rankin, Asst. Atty. Gen., Jackson, Miss., for defendants.

Before CLARK, Circuit Judge, and COX and NIXON, District Judges.

## OPINION OF THE COURT

NIXON, District Judge:

In his Verified Complaint filed herein, plaintiff, an adult resident citizen of Jackson, Mississippi, brought this action individually and on behalf of all others similarly situated, against the defendants, M. M. Roberts, President of the Board of Trustees of State Institutions of Higher Learning of the State of Mississippi, Robert E. Carter, Director of the University of Mississippi Medical Center and Dean of the University of Mississippi School of Medicine, and Pat L. Gilliland, Personnel Director of the University of Mississippi Medical Center, requesting a judgment declaring unconstitutional the Mississippi Subversive Activities Act,[1] which requires the execution of an oath by applicants for state employment as a prerequisite thereto. The plaintiff also prays for a permanent injunction against the enforcement of these statutes by the defendants, in addition to back pay allegedly due him for work performed prior to his discharge for failure to execute the above oath, and all necessary costs and expenses of this action, including a reasonable attorney's fee.

The plaintiff originally requested this Three Judge Court, which was properly convened with jurisdiction over the subject matter herein,[2] inasmuch as he seeks to have declared unconstitutional the Mississippi Subversive Activities Act, a state law of general application which requires that a loyalty questionnaire be signed under oath by everyone as a prerequisite to employment by the State of Mississippi. It is plaintiff's contention that this Act is unconstitutional because it abridges his freedom of speech contrary to the First and Fourteenth Amendments to the Con-

---

1. Laws of 1950, c. 451 (§§ 4064-01 through 4064-13, Miss.Code, Rec.)

2. 28 U.S.C. §§ 1343(3), 2201 and 2202; 42 U.S.C. § 1983.

stitution of the United States, and because the oath requirement and the statutory provisions on which it is based are invalid on their face inasmuch as their language is unduly vague, uncertain and broad, thus violating the due process requirement of the Fourteenth Amendment to the United States Constitution.

Subsequent to the filing of his complaint requesting the convening of this Court, plaintiff filed a written motion requesting the transfer of this case to a single District Judge, alleging the lack of a substantial constitutional question because the substantive provisions of the statutes in question sub judice are identical to those of the State of Washington which were declared unconstitutional by the United States Supreme Court in the case of Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).[3] It is the opinion of this Court, convened pursuant to the request of the plaintiff, that it has jurisdiction of this case, and accordingly, the plaintiff's "Transfer Motion" is overruled.

After a full hearing before the managing Judge of this case, the plaintiff's Motion for a Temporary Restraining Order was overruled.[4]

The oath requirements of the 1950 Act, Mississippi Laws, 1950, c. 451, applicable to all state employees, including teachers and other employees of all public educational institutions within the state, incorporate various provisions of the Act, which provides generally that "no subversive person, as defined in this act, shall be eligible for employment in, or appointment to any office, or any position of trust or profit in the government of, or in the administration of the business of this state, or of any county, municipality, or other political subdivision of this state." Mississippi Code of 1942, Rec., § 4064–02. The term "subversive person" is defined as follows:

" 'Subversive person' means any person who commits, attempts to commit, or aids in the commission, or advocates, abets, advises or teaches by any means any person to commit, attempt to commit, or aid in the commission of any act intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the State of Mississippi, or any political subdivision of either of them, by revolution, force, violence, or other means not provided for or sanctioned by the Constitution of the State of Mississippi or the Constitution of the United States; or who is a member of a subversive organization or a foreign subversive organization." Mississippi Code of 1942, Rec., § 4064–01.

The Act also defines "organization", "subversive organization", "foreign subversive organization" and "foreign government".[5]

---

3. The plaintiff's request for transfer is based on Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

4. The Court Reporter's verbatim transcript of that hearing held on February 6, 1970 was admitted in evidence by stipulation as "Parties Exhibit 1."

5. "For the purpose of this act—
    'Organization' means an organization, corporation, company, partnership, association, trust, foundation, fund, club, society, committee, political party, or any group of persons, whether or not incorporated, permanently or temporarily associated together for joint action or advancement of views on any subject or subjects.
    'Subversive Organization' means any organization which engages in or advocates, abets, advises, or teaches, or a purpose of which is to engage in or advocate, abet, advise, or teach activities intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the State of Mississippi, or of any political subdivision of either of them, by revolution, force, violence, or other means not provided for or sanctioned by the Constitution of the State of Mississippi or the Constitution of the United States.
    'Foreign subversive organization' means any organization directed, dominated or controlled directly or indirectly by a foreign government which engages in or advocates, abets, advises, or teaches, or a purpose of which is to engage in or to

The following written Stipulation of Facts has been filed herein by the parties:

Comes now the plaintiff and the defendants and present to the Court the following stipulations:

1. Plaintiff is an adult citizen of the United States and a resident citizen of the City of Jackson, Hinds County, Mississippi. Defendant M. M. Roberts is President of the Board of Trustees of State Institutions of Higher Learning of the State of Mississippi and is an adult resident citizen of the City of Hattiesburg, Forrest County, Mississippi. Defendant Robert E. Carter is Director of the University of Mississippi Medical Center and Dean of the University of Mississippi School of Medicine and is an adult resident citizen of the City of Jackson, Hinds County, Mississippi. Defendant Pat L. Gilliland is Personnel Director of the University of Mississippi Medical Center and is an adult resident citizen of the City of Jackson, Hinds County, Mississippi.

2. All defendants, at all times stipulated herein, were acting under color of law of the State of Mississippi.

3. Plaintiff was employed by the University of Mississippi Medical Center from January 14, 1969, to March 7, 1969, as an oxygen technician. At the time of his employment, plaintiff completed all required forms including the loyalty questionnaire. During these fifty-three days plaintiff was absent from work six days. He resigned on March 7, 1969, after giving proper notice.

4. Plaintiff was rehired at the Medical Center on August 25, 1969, as an oxygen technician, after completing all required forms for employment including the loyalty questionnaire. He worked satisfactorily in this position until September 19, 1969, when he did not report for work. Plaintiff was terminated from this employment on October 1, 1969.

5. After plaintiff consulted with Dr. T. Walter Treadwell, Jr., Director of Inhalation Therapy Service at the University of Mississippi Medical Center, plaintiff was rehired on December 2, 1969, as oxygen technician and began work on that day in that capacity. On December 6, 1969, plaintiff was accepted on probation as an inhalation therapy technician trainee and continued working in this capacity until December 19, 1969. If plaintiff had signed all the papers required for employment his net earnings for the time he worked at the Medical Center between December 2, 1969, and December 19, 1969, would have been $209.12. The Medical Center and its agents, including all the defendants, have paid the plaintiff nothing on account of his work at the Medical Center between December 2, 1969 and December 19, 1969.

6. Plaintiff refused between December 2, 1969 and December 19, 1969, to sign the loyalty questionnaire required to be signed as a condition of employment at the Medical Center by the Board of Trustees of State Institutions of Higher Learning of the State of Mississippi, pursuant to the Mississippi Subversive Activities Act, (Sections 4064–01 through 4064–13, Miss.Code Ann. (1956)). A true copy of the loyalty questionnaire is attached to the Complaint herein as Exhibit "B".

advocate, abet, advise, or teach activities intended to overthrow, destroy, or alter, or to assist in the overthrow, destruction or alteration of the constitutional form of the government of the United States, or of the State of Mississippi, or of any political subdivision of either of them, and to establish in place thereof any form of government the direction and control of which is to be vested in, or exercised by or under, the domination or control of any foreign government, organization, or individual; but does not and shall not be construed to mean an organization the bona fide purpose of which is to promote world peace by alliances or unions with other governments or world federations, unions or governments to be effected through constitutional means.

'Foreign government' means the government of any country or nation other than the government of the United States of America or of one of the States thereof." Miss.Code, Rec., § 4064–01.

7. On December 19, 1969, plaintiff was called to the office of defendant Gilliland and was advised by defendant Gilliland that all personnel of the State of Mississippi were required by the Mississippi Subversive Activities Act to sign a written statement that they are not subversive persons as defined in said Act. At that time defendant Gilliland supplied the plaintiff, at plaintiff's request, with a copy of Sections 1 through 5 of said Act, a true copy of which is attached to the Complaint herein as Exhibit "B". Defendant Gilliland also supplied plaintiff with a copy of the said loyalty questionnaire and a letter dated December 19, 1969, from defendant Gilliland to plaintiff, a true copy of which letter is attached to the Complaint herein as Exhibit "A".

8. On December 19, 1969, defendant Gilliland, as Personnel Director of the University of Mississippi Medical Center, terminated the employment of the plaintiff at the Medical Center.

9. The Governor of Mississippi approved on April 12, 1950, a statute passed by the Legislature of the State of Mississippi, Laws of 1950, Chapter 451, known as the "Mississippi Subversive Activities Act". This statute was subsequently codified in Sections 4064–01 through 4064–13, Miss.Code Ann. (1956).

10. Exhibit "A" hereto is a true copy of chapter 9.81, Washington Revised Code, known as the Washington Subversive Activities Act of 1951.

So stipulated this 1st day of June, 1970.

/s/ A. Spencer Gilbert III

A. SPENCER GILBERT III
925 Electric Building
P. O. Box 651
Jackson, Mississippi    39205
Attorney for Plaintiff

/s/ James E. Rankin

JAMES E. RANKIN
Special Assistant Attorney General of Mississippi
P. O. Box 220
Jackson, Mississippi    39205
Attorney for Defendants

The only factual dispute is whether the defendant, Gilliland, terminated plaintiff's employment for any reason other than plaintiff's refusal to execute the loyalty questionnaire. The plaintiff has filed a written Motion to Strike that part of Paragraphs 4 and 5 of the defendants' Answer which disputes the plaintiff's contention that the refusal to sign was the sole basis of the termination of his employment at the University Medical Center, and in support of this Motion he alleges that there is no reasonable basis for this contention by the defendants; that under Rule 11, Federal Rules of Civil Procedure, defendants' averment was interposed merely for the purpose of delay or with the intention to defeat the purpose of Rule 11, and that the "Answer or those parts thereof should be stricken." Rule 11 states that if a pleading is signed with intent to defeat the purpose of the Rule, it may be stricken as sham and false. We do not feel that under the circumstances of this case, however, Rule 11 is applicable. In any event, in view of this Court's finding of fact on this disputed issue, the Motion to Strike will be overruled.

The evidence preponderates in favor of the allegation by the plaintiff that his employment at the University Medical Center was terminated solely because of his refusal to execute the loyalty questionnaire,[6] which reads as follows:

"Board of Trustees
Institution of Higher Learning
State of Mississippi

---

6. This loyalty questionnaire is attached as Exhibit "B" to the Verified Complaint filed herein and admitted in evidence as Movant's Exhibit 1 at the hearing on

the Motion for Temporary Restraining Order, the entire transcript of which has been filed herein and by agreement of the parties was admitted into evidence herein.

LOYALTY QUESTIONNAIRE TO BE COMPLETED UNDER SUBVERSIVE ACTIVITIES ACT OF 1950 BY APPLICANTS FOR POSITIONS IN INSTITUTIONS OF HIGHER LEARNING

1. Are you a subversive person as such term is defined in the above-stated which term is therein defined as any person who commits, attempts to commit, or aids in the commission, or advocates, abets, advises or teaches by any means any person to commit, attempt to commit or aid in the commission of any act intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the State of Mississippi, or any political subdivision of either of them, by revolution, force, violence, or other means not provided for or sanctioned by the Constitution of the State of Mississippi or the Constitution of the United States?

Yes  (  )

No  (  )

2. Are you a member of a subversive organization as defined by the above-stated act, which term is therein defined as any organization which engages in or advocates, abets, advises, or teaches, or a purpose of which is to engage in or advocate, abet, advise or teach activities intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the State of Mississippi, or of any political subdivision of either of them, by revolution, force, violence, or other means not provided for or sanctioned by the Constitution of the State of Mississippi or the Constitution of the United States?

Yes  (  )

No  (  )

3. Are you a member of a foreign subversive organization as such term is defined in the above-stated act, which is therein defined as any organization directed, dominated or controlled directly or indirectly by a foreign government which engages in or advocates, abets, advises, or teaches, or a purpose of which is to engage in or to advocate, abet, advise, or teach activities intended to overthrow, destroy, or alter, or to assist in the overthrow, destruction or alteration of the constitutional form of government of the United States, or of the State of Mississippi or of any political subdivision of either of them, and to establish in place thereof any form of government the direction and control of which is to be vested in, or exercised by or under the domination or control of any foreign government, organization, or individual?

Yes  (  )

No  (  )

I declare and understand that this statement is made by me subject to the penalties of perjury as provided and set forth in said subversive activities act of 1950 for any material misstatement of fact herein, and that for such purposes this statement shall be deemed to have been made by me under oath as provided under said Act.

Affixed my signature this the _____ day of _____, 19__

_____ (Name)

_____ (Address)"

In the latter part of November, 1969, after several discussions with Dr. T. Walter Treadwell, Jr., Director of Inhalation Therapy Service at the University Medical Center, the plaintiff was rehired on December 2, 1969 for his third period of employment and accepted on probation as an inhalation therapy technician trainee on December 6, 1969, despite the recommendation to the contrary by the defendant, Gilliland, because of plaintiff's poor and sporadic employment record during his two previous periods of employment by the Medical Center. Each of these three periods of employment was within the standard 90 day probationary period for employees, but plaintiff was placed on an additional probationary period by Dr. Treadwell, his superior, because of his previous employment record. After working at the Medical Center as an inhalation therapy technician trainee from December 2, 1969 until December 19,

1969, plaintiff was called to Gilliland's office and was advised by him that all personnel of the State of Mississippi were required by the Subversive Activities Act of Mississippi to execute the loyalty questionnaire. At that time Gilliland handed the plaintiff a letter informing him that no person may be employed or paid by the State of Mississippi unless the loyalty questionnaire is completed and signed, and that if he did not wish to comply with the law then he "may not be employed by the University Medical Center." At this time Gilliland also handed to plaintiff a copy of the Subversive Activities Act of the State of Mississippi and a copy of the loyalty questionnaire prescribed by the Board of Trustees of State Institutions of Higher Learning of the State of Mississippi.[7] On direct examination during the hearing on the Motion for Temporary Restraining Order the defendant Gilliland testified as follows:

"Q. Do your records reflect why he was terminated on December 19?

A. He was terminated due to his failure or desire to sign the loyalty oath required of all state employees.

Q. Were the other necessary forms completed by Mr. Haining?

A. Yes, they were." (Tr. pp. 1, 19–20).

On cross examination by plaintiff's attorney Gilliland answered as follows:

"Q. You testified that Mr. Haining was terminated from employment at the Medical Center by your office on that date (December 19, 1969)?

A. That's correct.

Q. Was there any reason other than the fact that he refused to sign the loyalty oath that you terminated his employment on that date?

A. No." (Tr. pp. 24–25).

Despite the fact that plaintiff had a poor employment record at the University Medical Center and for this reason was on probation, and although he had undergone psychiatric treatment on three different occasions for emotional problems,[8] it is nevertheless clearly established that the sole and only reason for plaintiff's dismissal on December 19, 1969 and the refusal to pay him for his work performed between December 2 and December 19, 1969 was his refusal to execute the loyalty questionnaire prescribed pursuant to the provisions of the Mississippi Subversive Activities Act.

█ In view of the above finding, the defendants' assertion that plaintiff has no real, substantial interest and thus has no standing to bring this action is without merit as is their contention that the issue has become moot. Their reliance upon Henry v. Coahoma County Board of Education, 353 F.2d 648 (C.A.5, 1965); cert. den. 384 U.S. 962, 85 S.Ct. 1586, 16 L.Ed.2d 674 and Troy State University v. Dickey, 402 F.2d 515 (C.A. 5, 1968) is misplaced. Certainly, the plaintiff has a legal and equitable standing to challenge his discharge for failure to comply with an Act which he contends is unconstitutional and which affected him from an economic standpoint, and this issue has not become moot, which is evidenced by the fact that he now seeks reinstatement and payment of back wages for work performed.

█ The defendants next contend that this Court should not determine the constitutionality of the Mississippi Subversive Activities Act inasmuch as it is not necessary to do so because plaintiff has not come into equity with clean hands and is not entitled to any relief in view of

---

7. See Exhibits "A", "B", and "C", respectively to the Complaint filed herein and admitted in evidence as Movant's Exhibit 1 at the hearing on the Temporary Restraining Order, which was made a part of this record by the stipulation of the parties.

8. See affidavit of Dr. W. L. Jacquith, Director of the Mississippi State Hospital at Whitfield, Mississippi introduced by stipulation at this hearing.

the fact that he willfully and affirmatively refused to execute the loyalty questionnaire as directed. Although it is a well settled rule that the constitutionality of a statute will not be judicially determined unless such determination cannot be avoided,[9] the constitutionality vel non of the Mississippi Act must be determined in order to decide this case, inasmuch as plaintiff refused to sign the loyalty questionnaire on the ground that it and the Act which required its execution violated his constitutional rights guaranteed by the First and Fourteenth Amendments to the United States Constitution. We therefore turn to the principal issue in this case, that is, whether the oath requirement and the statutory provisions on which it is based are invalid on their face because their language is unduly vague, uncertain and broad.

In Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), the United States Supreme Court was requested to abstain from deciding the constitutionality of one of the two "loyalty oath statutes" attached because it had been on the books for over three decades but had never been interpreted by the Washington State Courts. The U. S. Supreme Court, in rejecting the abstention request, stated:

"  *   *   *  The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers.  *   *   *  We doubt, in the first place, that the construction of the oath provisions, in light of the vagueness challenge, would avoid or fundamentally alter the constitutional issue raised in this litigation.  *   *   *  The challenged oath is not open to one of few interpretations, but to an indefinite number. There is no uncertainty that the oath applies to the appellants and the issue there raised is not whether the oath permits them to engage in certain definable

activities. Rather their complaint is that they, about 64 in number, cannot understand the required promise, cannot define the range of activities in which they might engage in the future, and do not want to forswear doing all that it is literally or arguably within the purview of the vague terms.  *   *  Construction of this oath in the state court, abstractly and without reference to concrete, particularized situations so necessary to bring into focus the impact of the terms on constitutionally protected rights of speech and association, Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 341, 56 S.Ct. 466, 480, 80 L.Ed. 688 (Brandeis, J., concurring), would not only hold little hope of eliminating the issue of vagueness but also would very likely pose other constitutional issues for decision, a result not serving the abstention-justifying end of avoiding constitutional adjudication.  *   *   *  Meanwhile, where the vagueness of a statute deters constitutionally protected conduct, 'the free dissemination of ideas may be the loser.' Smith v. California, 361 U.S. 147, 151, 80 S.Ct. 215, 218 [4 L.Ed.2d 205.]" (377 U.S. 360, 375, 378–379, 84 S.Ct. 1316, 1326)

The defendants' attorney, during the hearing of the case sub judice, conceded that if this Court should find that plaintiff's discharge was based solely on his refusal to sign the loyalty questionnaire, and the Court was faced with the question of the constitutionality of the Mississippi Act, that the United States Supreme Court decision in Baggett v. Bullitt, *supra,* would control, inasmuch as he could not distinguish the Mississippi Act from the Washington Act which was declared unconstitutional by the Supreme Court. We agree. If anything, the Mississippi Act contains language which is even broader and more vague than that of the Washington Act by virtue of the fact that it, in defining "Subversive Organization" and "Subver-

9. Rosenberg v. Fleuti, 374 U.S. 449, 451, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963); Woodard v. General Motors Corporation, 298 F.2d 121, 127 (C.A. 5, 1962), cert. den. 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed. 2d 288 (1962).

sive person" contains not only the term "revolution", condemned in Baggett v. Bullitt, *supra* but further provides that "subversive activity" also includes " * * or other means not provided for or sanctioned by the Constitution of the State of Mississippi or the Constitution of the United States. * * * " [10] The Supreme Court in *Bullitt* had the following to say with reference to the use of the word "revolution":

"The Washington oath goes beyond overthrow or alteration by force or violence. It extends to alteration by 'revolution' which, unless wholly redundant and its ordinary meaning distorted, includes any rapid or fundamental change. Would, therefore, any organization or any person supporting, advocating or teaching peaceful but far-reaching constitutional amendments be engaged in subversive activity?" (377 U.S. 370, 84 S.Ct. at 1321)

The Mississippi Act, like the Washington Act, provides that every written statement made pursuant thereto by an applicant for appointment or employment, or by an employee, shall be deemed to have been made under oath if it contains a declaration preceding the signature of the maker to the effect that it is made under the penalties of perjury, as the loyalty questionnaire hereon so provides. In *Bullitt*, the Court stated:

"The susceptibility of the statutory language to require forswearing of an undefined variety of 'guiltless knowing behavior' is what the Court condemned in Cramp. [Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285] This statute, like the one at issue in Cramp, is unconstitutionally vague.

"The Washington statute suffers from additional difficulties on vagueness grounds. A person is subversive not only if he himself commits the specified acts but if he abets or advises another in aiding a third person to commit an act which will assist yet a fourth person in the overthrow or alteration of constitutional government. The Washington Supreme Court has said that knowledge is to be read into every provision and we accept this construction. Nostrand v. Balmer, 53 Wash.2d 460, 483–484, 335 P.2d 10, 24; Nostrand v. Little, 58 Wash.2d 111, 123–124, 361 P.2d 551, 559. But what is it that the Washington professor must 'know'? Must he know that his aid or teaching will be used by another and that the person aided has the requisite guilty intent, or is it sufficient that he know that his aid or teaching would or might be useful to others in the commission of acts intended to overthrow the Government? Is it subversive activity, for example, to attend the participate in international conventions of mathematicians and exchange views with scholars from Communist countries? What about the editor of a scholarly journal who analyzes and criticizes the manuscripts of Communist scholars submitted for publication? Is selecting outstanding scholars from Communist countries as visiting professors and advising, teaching, or consulting with them at the University of Washington a subversive activity if such scholars are known to be Communists, or regardless of their affiliations, regularly teach students who are members of the Communist Party, which by statutory definition is subversive and dedicated to the overthrow of the Government?" (377 U.S. 368–370, 84 S.Ct. at 1321).

In discussing the perjury aspect of the Washington statute, the Court in *Bullitt* stated:

"Even if it can be said that a conviction for falsely taking this oath would not be sustained, the possibility of a prosecution cannot be gainsaid. The State may not require one to choose between subscribing to an unduly vague and broad oath, thereby incurring the likelihood of prosecution, and conscientiously refusing to take the

---

10. Mississippi Code of 1942, Rec., Section 4064–01.

oath with the consequent loss of employment, and perhaps profession, particularly where 'the free dissemination of ideas may be the loser.' Smith v. California, 361 U.S. 147, 151, 80 S.Ct. 215, 218 [4 L.Ed.2d 205.]. 'It is not the penalty itself that is invalid, but the exaction of obedience to a rule or standard that is so vague and indefinite as to be really no rule or standard at all.' " (cited cases omitted) (377 U.S. 374, 84 S.Ct. at 1324).

We think that the concluding paragraph of the majority opinion in *Bullitt* succinctly and precisely states the basis for our holding the Mississippi Subversive Activities Act to be unconstitutional because the language therein is unduly vague, uncertain and broad:

"As in Cramp v. Board of Public Instruction, supra, we do not question the power of a State to take proper measures safeguarding the public service from disloyal conduct. But measures which purport to define disloyalty must allow public servants to know what is and is not disloyal. 'The fact \* \* \* that a person is not compelled to hold public office cannot possibly be an excuse for barring him from office by state-imposed criteria forbidden by the Constitution.' Torcaso v. Watkins, 367 U.S. 488, 495–496, 81 S. Ct. 1680, 1684, 6 L.Ed.2d 982." (377 U.S. 379–380, 84 S.Ct. at 1327).

See Rafferty v. MacKay, 400 U.S. 954, 91 S.Ct. 355, 27 L.Ed.2d 263 in which the United States Supreme Court on December 14, 1970, summarily affirmed the judgment of the United States District Court for the Northern District of California, holding that the California statute requiring an applicant for public school teacher's certificate to swear or affirm to "promote respect for the flag and respect for law and order and allegiance to the Government of the United States of America," is essentially indistinguishable from the oath declared unconstitutional in Baggett v. Bullitt, *supra*.

Although the plaintiff originally filed this suit on behalf of himself individually and on behalf of all others similarly situated, he apparently felt that he had not complied with the prerequisites of a class action and therefore subsequently filed a written motion herein for maintenance of this suit as a class action. We have by written Order filed herein granted this Motion.

■ It is the contention of the plaintiff that the class he represents consists of all persons employed by State Institutions of Higher Learning who are required to sign the loyalty questionnaire under consideration herein. There can be no question that the employees of the State Institutions of Higher Learning and all applicants for employment at the State Institutions of Higher Learning are a sufficiently defined class. Likewise, it is clear that the plaintiff, as the representative party, is a member of this class and his claims are typical of the claims of the class as required by Rule 23(a), Federal Rules of Civil Procedure. Accordingly, the judgment in this action shall include and describe those whom the Court herein has found to be members of the class. Rule 23(c) (3); Federal Rules of Civil Procedure.

■ Although the allowance of attorney's fees is normally predicated upon contract or statutory authorization, this Court, sitting as a court of equity, does have the inherent power to award attorney's fees where the circumstances warrant. Kemp v. Beasley, 352 F.2d 14, 23 (C.A.8, 1965); Smoot v. Fox, 353 F.2d 830, 832 (C.A.6, 1965). In the exercise of this equitable discretion in civil rights cases, courts have generally denied the extraordinary relief of awarding attorney's fees absent a finding of "unreasonable, obdurate obstinancy" on the part of the defendant. See Bradley v. School Board of the City of Richmond, 345 F.2d 310, 321 (C.A.4, 1965); Kemp v. Beasley, *supra*; Williams v. Kimbrough, 295 F.Supp. 578, 587, affd. 415 F.2d 874 (C.A.5, 1969), cert. den., 396 U.S. 1061, 90 S.Ct. 753, 24 L.Ed.2d 755 (1970).

■ In this case sub judice, there is no proof in the record to indicate that the defendants had any knowledge of the

United States Supreme Court's opinion in Baggett v. Bullitt, *supra*, prior to the termination of the plaintiff's employment. Furthermore, there had been no judicial determination by the Supreme Court of Mississippi, concerning the constitutionality of the Mississippi Subversive Activities Act and the effect thereon of the Supreme Court decision in Baggett v. Bullitt, *supra*. Under these circumstances, this Court is of the opinion and finds that the conduct of the defendants in requiring the execution of the loyalty oath questionnaire as a condition for employment was not malicious, oppressive, or so "unreasonable and obdurately obstinate" as to warrant an award for attorney's fees. Plaintiff is, however, entitled to an award for the necessary costs and expenses of this action.

 In conclusion, it is the opinion of this Court that the Mississippi Subversive Activities Act is unconstitutional and defendants herein shall be permanently restrained in the enforcement and execution of said Act and in the enforcement and execution of any order pursuant to said Act by the Board of Trustees of the State Institutions of Higher Learning of the State of Mississippi. Although in Paragraph 4 of his Complaint, the plaintiff asks for all wages lost as a result of his discharge, he nevertheless apparently abandoned this claim in view of the fact that both in Paragraph (5) of the Pre-Trial Order submitted herein and in his Memoranda of Authorities submitted to the Court he restricts his claim to back wages to the amount of $209.12 which was withheld by the Medical Center despite the fact that he worked and earned this amount. The Court is of the opinion that plaintiff shall be paid his back wages which were withheld by the Medical Center in the amount of $209.12. If there is any dispute or contention concerning the payment of any other wages withheld, this matter shall be decided by the Managing Judge. Finally, it is the opinion of this Court that the plaintiff shall be reinstated to his employment at the Medical Center as an inhalation therapy technician trainee provided he applies therefor within thirty (30) days of this date and provided further that he be found otherwise competent and qualified to perform this sensitive, technical, medical service.

A Judgment accordingly shall be presented within five days after this date under the Rules of this Court.

A Final Judgment in this case may be signed by the Managing Judge with the authority and on behalf of the other Judges of this Three Judge Court.

CLARK, Circuit Judge.
I concur.