## REDDICK *v.* STATE COMMISSIONER OF PERSONNEL

[No. 193, October Term, 1956.]

196

*Decided May 3, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HAMMOND and PRESCOTT, JJ., and KINTNER, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*John J. O'Connor, Jr.,* for the appellant.

*Norman P. Ramsey* and *James H. Norris, Jr., Special Assistant Attorneys General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Dr. Robert H. Reddick, a psychiatrist employed by the State as head of the female division of the Eastern Shore State Hospital, was removed from State service by the Commissioner of · Personnel, after the preferring of charges and a

hearing, for conduct bringing the classified service into public disrepute. Dr. Reddick sought a writ of *mandamus,* alleging (a) that his hearing before the Commissioner was unfair because the office of the Attorney General participated in a dual capacity by prosecuting the charge and at the same time acting as counsel to the Commissioner; (b) that the dismissal was not based on sufficient or substantial evidence and, so, was arbitrary and capricious; and (c) that his discharge was a violation of the merit system law requiring cause for the dismissal of an employee. The trial court dismissed the petition for *mandamus* on the evidence presented to it, a jury trial having been waived.

The merit system law, Code, 1951, Art. 64A, controls the decision of the case. Section 10 provides that it is the duty of the Commissioner of Personnel to promulgate rules necessary to effectuate the provisions of the law and that such rules "shall have the force and effect of law". Section 29 provides that: "No employee who has completed his probation may be permanently removed from the classified service except for cause, upon written charges and after an opportunity to be heard in his own defense." The Commissioner or some person designated by him is directed to hear and determine the charges. Section 29 goes on to provide: "The Commissioner shall, by rule, prescribe what may constitute cause for removal, but no removal shall be allowed because of the religious or political opinions or affiliations of any employee." The Commissioner has duly promulgated merit system rules. Rule 47 states in part: "The following shall be sufficient cause of removal, though removal may be for causes other than those enumerated: * * *. N. That the employee has been guilty of conduct such as to bring the classified service into public disrepute." No attack was made below on the validity of the rule. Judge Manley noted this and, assuming the rule to be valid, turned his decision on whether or not Dr. Reddick had violated the rule, as written. Under former Rule 9 of the Rules of the Court of Appeals, now Rule 885 of the Maryland Rules, we do not pass on the validity of the rule.

The charges against Dr. Reddick were based on his ac-

198

tivities as an actual or claimed member of the Maryland State Homeopathic Medical Society, sometimes referred to hereafter as the "Society", and of the Board of Medical Examiners of that society, which will be called the "Examiners", in licensing unqualified doctors. The full story of Dr. Reddick's sins is set forth in *Reddick v. State,* 213 Md. 18, the case in which he was enjoined from further action in this respect. Enough here is that sometime in 1954 he reactivated the Society and the Examiners, which had been dormant, and became secretary and treasurer of each. In 1955 he gave examinations to, and licensed, twenty-three unqualified candidates, known to him to be unqualified. Each of these candidates "contributed" four hundred dollars to the Society and these sums, for practical purposes, became his. When the legitimate president of the Society protested, Dr. Reddick purported to remove him as president and as a member of the Examiners, and to name Dr. Virkutis, his subordinate at the Eastern Shore State Hospital, as president of the Society and of the Examiners. Thereupon, Dr. Reddick had Dr. Virkutis sign in blank thirty-five to forty-five medical licenses, six of which he issued, apparently with no authority or justification whatsoever. Although Dr. Reddick resigned under compulsion as secretary and treasurer of the Society and Examiners, he claimed to have been reinstated two days later at a meeting he alleged to have been held (but that apparently never was held), and continued to issue medical licenses. Finally, at the instigation of the Attorney General, Dr. Reddick and his cohorts were enjoined from further illegal activities by Judge Byrnes, whose action was affirmed here in *Reddick v. State, supra.* At the trial, Dr. Reddick offered in evidence what was claimed by him to be the constitution and by-laws of the Society, that gave him almost unlimited powers, which was characterized by Judge Byrnes as a "palpably fraudulent document". Judge Byrnes found Dr. Reddick's sworn testimony to be "unworthy of belief * * *." In *Reddick v. State, supra,* we said: "With these findings of the Chancellor, we are in complete accord." We said, too: "In this Court's opinion, Reddick's conduct was reprehensible in the extreme."

Introduced in evidence before the Commissioner of Personnel was the transcript of the court proceedings in Dorchester County brought to compel Dr. Reddick to turn over to the legitimate holders the records and minutes of the Society and the Examiners, and that of the proceedings before Judge Byrnes in Baltimore. Clippings from the News-Post and Sunday American and the Morning and Evening Sun, regarding Reddick, and an issue of Time Magazine containing an article about Reddick, also came in. The clippings were introduced to show the widespread dissemination and extensive public knowledge of the charges against Reddick for licensing unqualified applicants to practice medicine and the findings on those charges. Dr. Perkins, Commissioner of Mental Hygiene, testified that although Reddick's professional services had been satisfactory, he believed that his activities were inconsistent with the welfare of the citizens of Maryland and that he would not want to employ him in any State Hospital. His immediate superior, who had brought the charges against him, felt that because of Dr. Reddick's behavior outside of the hospital he should no longer be a State employee. The president of the Caroline County Medical Society testified that the society had passed a resolution in 1956, requesting that Dr. Reddick's services be discontinued by the Department of Mental Hygiene. Dr. Depner, then Director of Hospital Inspection and Licensure, and recently appointed Assistant Commissioner of Mental Hygiene, testified that he had attended most of the court hearings involving Dr. Reddick and that in his opinion, based upon what he had heard Dr. Reddick and others say under oath, he felt that Dr. Reddick had brought disrepute on both the medical profession and the classified service. Judge Manley found that Dr. Reddick's misconduct had affected his qualifications for employment. It was his view that the actions Dr. Reddick took and which were restrained by Judge Byrnes in "a scathing denunciation" reflected directly on, and tended to lower, his professional standing, and that the retention in the public service of a doctor against whom such serious charges had been substantiated, would bring that service into public disrepute.

The appellant urges that the hearing was unfair because the Attorney General participated both as a prosecutor and as advisor to the Commissioner. It is not said there was any actual unfairness, only that unfairness was inherent in the situation. Code, 1951, Art. 32A, Sec. 2, makes the Attorney General the legal advisor and representative of all "* * * boards, commissions, departments, officers or institutions of the State Government", except as otherwise provided. The Assistant Attorney General assigned to present the evidence against Dr. Reddick was fulfilling a duty imposed by law upon the Attorney General. There is nothing in the record to show that the Attorney General drew the charges against Dr. Reddick or advised the Commissioner in relation to them, and at the argument we were told that he had not. We find it unnecesary to consider whether the appellant's argument would be sound if there had been dual representation in fact, but this observation is not intended to imply that if there had been, it would be condemned. On the facts before us we find no merit in appellant's claim. Dr. Reddick complains because the Deputy Attorney General, who had participated in the court hearings against him and was thoroughly familiar with what he had said and done in those proceedings, was on hand at the hearings before the Commissioner, not as counsel but as a ready rebuttal witness. We see no justification for this complaint.

We assume, without deciding that "conduct such as to bring the classified service into public disrepute" must be, as appellant argues, conduct that bears upon the character or fitness of the employee in relation to the duties he performs and that the challenged conduct must affect his qualifications for his work. Where discharge can be only for cause, the cause must be one "* * * affecting or concerning the ability or fitness of the incumbent to perform the duty imposed upon him." *Street Commissioners of Hagerstown v. Williams,* 96 Md. 232, 239. A doctor should have the highest moral and ethical standards. Dr. Reddick has been judicially determined by the chancellor and this Court to have offered fraudulent written evidence, to have lied under oath, to have licensed many clearly unqualified applicants for the practice

of medicine and to have deliberately and fixedly sought to be able to continue this unlawful and unethical practice. A psychiatrist must testify in court as to the mental capacity of his patients. No confidence whatever could be placed in Dr. Reddick's testimony after his unreliability on the stand has been so clearly demonstrated and recognized. His colleagues at the State Hospital, his patients and their families and friends could put no confidence in his observations, his diagnoses or prognoses, for what he has done indicates that if it served his ends he would falsify those. His standing as a doctor is bound to have been seriously affected by his reprehensible conduct in foisting upon the medical profession and the public completely unqualified physicians, unlawfully licensed. In so doing he debased his own profession. The testimony of his fellow doctors at the hearing before the Commissioner, the action of the Medical Society of Caroline County, the widespread public knowledge of his indefensible behavior, put it beyond argument that the citizens or their public servants could tolerate the retention of the services of such a man. If he were continued as a State employee, the classified service would certainly be brought into public disrepute. It has been recognized that conduct evidencing moral turpitude, or grossly unbecoming conduct having a relation to the duties performed as an employee, constitute cause justifying separation from the service. 4 *McQuillin, Municipal Corporations,* 3rd Ed., Sec. 12.239.

It is our opinion that Dr. Reddick has no just reason whatever to complain of the action that was taken against him by the Commissioner of Personnel.

*Order affirmed, with costs.*