Howard Joseph **WHITEHILL, Jr.,**
**Plaintiff,**

v.

Wilson **ELKINS, President University of Maryland, Board of Regents, University of Maryland, J. Jerome Frampton, Jr., President, State Board of Education, Defendants.**

**Civ. A. No. 17564.**

United States District Court
D. Maryland.

Sept. 8, 1966.

---

Sanford Jay Rosen, Arnold M. Weiner, Elsbeth Levy Bothe, Joseph S. Kaufman, and Lee M. Miller, Baltimore, Md., for plaintiff.

Thomas B. Finan, Atty. Gen. of Maryland, Robert C. Murphy, Deputy Atty. Gen. of Maryland, Loring E. Hawes and Julius A. Romano, Asst. Attys. Gen. of Maryland, for defendants.

Before SOBELOFF and WINTER, Circuit Judges, and THOMSEN, Chief Judge.

WINTER, Circuit Judge:

This action, brought under the Civil Rights Act, 42 U.S.C.A. § 1983, and invoking the civil rights and declaratory judgment jurisdiction of this Court, 28 U.S.C.A. §§ 1343(3), 2201 and 2202, seeks to enjoin the oath requirements of the Maryland Subversive Activities Act of 1949, 8A Annotated Code of Maryland (1964 Ed.), Article 85A, § 1 et seq., exacted of public employees as a condition precedent to public employment. Defendants' motion to dismiss admits the facts well pleaded, which are as follows:

Plaintiff is a member of the faculty of The Johns Hopkins University, teaching creative writing, an author, and a practicing member of the religious organization known as the Society of Friends. Plaintiff was engaged as a visiting lecturer in English at the University of Maryland, College Park, Maryland, for the academic year of 1966–1967. In July, 1966, a formal contract embodying the conditions of his employment was forwarded to plaintiff. He was also forwarded a document entitled "Certification of Applicant for Public Employment," which contained a loyalty oath.[1] Plaintiff was advised that he must sign it as a condition precedent to his employment. Plaintiff executed his employment contract, but declined to execute the loyalty oath. He was immediately advised by an authorized representative of the University of Maryland that that educational institution would not accept his services without the loyalty oath first having been executed by him. Plaintiff declined to sign this oath and has now brought this suit, seeking a declaration that the oath sought to be exacted from him was unconstitutional and seeking to enjoin defendants from preventing the consummation of his contract with the University of Maryland because of his failure to execute the oath.[2] Pursuant to

---

1. While this opinion uses the popular parlance "oath," technically plaintiff was required to make a written statement of his loyalty, under the penalties of perjury prescribed by 3 Annotated Code of Maryland (1957 Ed.), Art. 27, § 439. The document itself was entitled "Certification of Applicant for Public Employment" and the operative words were "I, _____ do hereby certify * * *." Article 39 of the Maryland Declaration of Rights guar-antees the right of any person to affirm, rather than swear, agreeably to his religious beliefs, and 1 Annotated Code of Maryland (1957 Ed.), Article 1, § 9 implements this guarantee.

2. Included among the defendants is J. Jerome Frampton, Jr., president of the Maryland State Board of Education. This board has no power with regard to the University of Maryland, the government of which is vested in its Board of

prayer in the complaint, a statutory three-judge court was immediately convened, 28 U.S.C.A. §§ 2281 and 2284, and the case heard as promptly as possible, inasmuch as plaintiff's employment was to begin September 19, 1966.

The oath sought to be exacted from plaintiff is as follows:

### "CERTIFICATION OF APPLICANT FOR PUBLIC EMPLOYMENT

Required by Law (Art. 85A, Paragraph 13, Annotated Code of Maryland, 1957)

"I, _____ do
(Print Name—including middle initial),
hereby certify that I am not engaged in one way or another in the attempt to overthrow the Government of the United States, or the State of Maryland, or any political subdivision of either of them, by force or violence.

"I further certify that I understand the aforegoing statement is made subject to the penalties of perjury prescribed in Article 27, Section 439 of the Annotated Code of Maryland (1957 edition)."

Date _____

Signature _____
(Name—including middle initial)

In his complaint plaintiff alleges that the loyalty oath is unconstitutional, because it infringes on his First and Fourteenth Amendment rights, is so vague as to deny him due process, and equal protection of the laws, and constitutes a bill of attainder against him. Additionally, plaintiff obliquely alleged that the oath would deny him freedom of religion, but in argument plaintiff made no contention that any specific religious belief held by him was counter to the certification that he was asked to make.

Article 85A of the Annotated Code of Maryland was enacted in its entirety in 1949 and has never been amended. Of the provisions pertinent to this case, § 10 renders ineligible for employment by the state any person who is a "subversive" person as defined in this Article. Section 13 required state employees who

were such on June 1, 1949, the effective date of the Act, to make a written statement, subject to the penalties of perjury, that he or she was not a "subversive" person as defined in Article 85A, and § 11 requires every department, board, commission or other agency of the State of Maryland or any political subdivision thereof in the appointment of new employees, to establish procedures, by rules, regulations or otherwise, to ascertain that any employee "including teachers and other employees of any public educational institution in this State" is not a "subversive" person as defined in the Article. The Attorney General of Maryland, in reliance upon these sections, has expressed the view that persons rendering occasional instructional services to the University of Maryland as part of the formal instruction program are required to execute the loyalty oath pledge. 45 Opinions Attorney General 187 (1960).

The operative words "subversive person" are defined by § 1, which reads:

"'Subversive person' means any person who commits, attempts to commit, or aids in the commission, or advocates, abets, advises or teaches by any means any person to commit, attempt to commit, or aid in the commission of any act intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the State of Maryland, or any political subdivision of either of them, by revolution, force, or violence; or who is a member of a subversive organization or a foreign subversive organization."

Because one is a "subversive person" if he is a member of a "subversive organization" or a "foreign subversive organization," the definitions of those terms, as set forth in § 1 of Article 85A, should also be stated. They are:

"'Subversive organization' means any organization which engages in or

Regents. 7 Annotated Code of Maryland (1965 Ed.), Article 77 § 249(e). The

motion to dismiss will be granted as to this defendant for improper joinder.

advocates, abets, advises, or teaches, or a purpose of which is to engage in or advocate, abet, advise or teach activities intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the State of Maryland, or of any political subdivision of either of them, by revolution, force, or violence.

"'Foreign subversive organization' means any organization directed, dominated or controlled directly or indirectly by a foreign government which engages in or advocates, abets, advises, or teaches, or a purpose of which is to engage in or to advocate, abet, advise, or teach, activities intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of the constitutional form of the government of, the United States, or of the State of Maryland, or of any political subdivision of either of them, and to establish in place thereof any form of government the direction and control of which is to be vested in, or exercised by or under, the domination or control of any foreign government, organization, or individual; but does not and shall not be construed to mean an organization the bona fide purpose of which is to promote world peace by alliances or unions with other governments or world federations, unions or governments to be effected through constitutional means."

While plaintiff asserts a denial of his First and Fourteenth Amendment rights to freedom of speech and freedom of association as well as equal protection of the laws, the first substantive issue we must decide is whether the oath is so broad, vague and indefinite that plaintiff has been denied due process of law. This is so because plaintiff's First and Fourteenth Amendment rights are not violated if the oath is valid under the due process clause; they have been violated only if the oath will not withstand the due process test. Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966).[3] Of course, the presence of First and Fourteenth Amendment rights buttresses the strictness of the due process requirement. We turn first to whether the oath is so broad, vague and indefinite as to deny due process of law.

The validity of Article 85A under state and federal law was sustained in the state courts in Shub v. Simpson, 196 Md. 177, 76 A.2d 332 (1950); Hammond v. Lancaster, 194 Md. 462, 71 A.2d 474 (1950); and Hammond v. Frankfeld, 194 Md. 487, 71 A.2d 482 (1950). One of the parties in the Shub case sought further review in the Supreme Court of the United States, Gerende v. Board of Supervisors of Elections, 341 U.S. 56, 71 S.Ct. 565, 95 L.Ed. 745 (1951). Technically, the oath found to be valid in the *Gerende* case was the oath required of

3. In the *Elfbrandt* case, the Arizona loyalty oath was held invalid because of its indefiniteness, i. e., its failure to require specific intent to subscribe to the unlawful ends of a subversive organization by one who has become a member thereof. The relationship between First and Fourteenth Amendment rights, on the one hand, and the due process requirement of definiteness, on the other, is demonstrated by the following extracts from the Court's opinion:

"This Act threatens the cherished freedom of association protected by the First Amendment, made applicable to the States through the Fourteenth Amendment. (* * * citing).

\* \* \* \* \*

"'A statute touching those protected rights must be narrowly drawn to define and punish specific conduct as constituting a clear and present danger to a substantial interest of the State.' Cantwell v. State of Connecticut, 310 U.S. 296, 311, 60 S.Ct. 900, 84 L.Ed. 1213. Legitimate legislative goals 'cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' * * *

"A law which applies to membership without the 'specific intent' to further the illegal aims of the organization infringes unnecessarily on protected freedoms. * * ·*" Id. at pp. 18–19, 86 S.Ct. at 1241–1242.

candidates for election by § 15 of Article 85A, while the oath to which plaintiff objects is the oath required by §§ 11 and 13 of Article 85A of state employees and appointed officers, but, since the oaths are identical in both situations, what the Supreme Court said in the *Gerende* case is determinative here. The Court affirmed the decision of the Maryland Court of Appeals in Shub v. Simpson, supra, saying:

> "We read this decision to hold that to obtain a place on a Maryland ballot a candidate need only make oath that he is not a person who is engaged 'in one way or another in the attempt to overthrow the government *by force or violence,*' and that he is not knowingly a member of an organization engaged in such an attempt. 76 A.2d at 338. At the bar of this Court the Attorney General of the State of Maryland declared that he would advise the proper authorities to accept an affidavit in these terms as satisfying in full the statutory requirement. Under these circumstances and with this understanding, the judgment of the Maryland Court of Appeals is affirmed." Id., 341 U.S. at 56–57, 71 S.Ct. at 565.

Thus, the Supreme Court in *Gerende* specifically approved of an oath that one is "not a person who is engaged in one way or another in the attempt to overthrow the government by force or violence," and that "he is not knowingly a member of an organization engaged in such an attempt." The oath in the case at bar is precisely in the form upheld by the Supreme Court, except that it eliminates the part of the oath that he who makes it also certifies that he is "not knowingly a member of an organization engaged in such an attempt [overthrow of the government by force or violence]." In argu-

ment we were told that the latter certification was eliminated from the form of oath at the instance of the Attorney General on May 3, 1966, following the decision in Elfbrandt v. Russell, supra [decided April 18, 1966]. In the light of this flat holding in *Gerende,* we need only determine whether *Gerende* has been subsequently overruled or modified to decide plaintiff's first contention. Plaintiff asserts that *Gerende's* authority has been impaired by Baggett v. Bullitt and Elfbrandt v. Russell, supra.

In Baggett v. Bullitt, supra, loyalty oaths of the State of Washington, one applicable to teachers and the other applicable to all state employees, including teachers, were held invalid for vagueness. The oath required of all state employees, including teachers, is the significant oath for the case at bar. It required employees to swear that they were not a "subversive person" which was defined in terms identical to those under Article 85A § 1 to include one who "advocates, abets, advises or teaches by any means" another to commit or aid in the commission of any act intended to overthrow or alter, or to assist the overthrow or alteration of the constitutional form of government by revolution, force or violence. Insofar as a "subversive person" was one who was a member of a "subversive organization," the Washington definition included a limitation, absent in the Maryland definition, that membership be knowing. The Supreme Court held the "advocates, abets, etc." language invalid because it was lacking in terms susceptible of objective measurement and failed to inform what the state commanded or forbade.[4]

The *Baggett* case is clear authority that if Maryland required an oath in the precise language of the Maryland

---

4. Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961), was relied on to support this result. There Florida required state employees, including teachers, to make oath that they, *inter alia,* had not lent "aid, support, advice, counsel or influence to the Communist Party." 368 U.S. at p. 279, 82 S.Ct. at p. 276. The oath was

held invalid because lacking in terms susceptible of objective measurement. In so deciding, the Court commented on the absence of language proscribing "advocacy of violent overthrow of state or federal government" and "membership or affiliation with the Communist Party, past or present." 368 U.S. at p. 286, 82 S.Ct. at p. 280.

Subversive Activities Act of 1949, supra, such an oath would be invalid. The fact is, however, that the oath sought to be exacted from the plaintiff in the case at bar is less than that condemned in *Baggett* and, indeed, less than that approved in *Gerende*. While the dissenters in Baggett v. Bullitt expressed the view that *Gerende* had been overruled by the decision in *Baggett*, explaining the reasons for this conclusion in a footnote,[5] the majority answered by footnote that *Gerende* was still good law.[6] In view of the statement by the majority we cannot read Baggett v. Bullitt as adversely affecting the portion of the holding in *Gerende* which approved the oath sought to be required of the plaintiff.

In Elfbrandt v. Russell, supra, the Arizona loyalty oath was held invalid. The language of the oath[7] as such did not appear to violate any constitutional fiat, but the legislature put a gloss on the oath by subjecting to a prosecution for perjury and for discharge from public office anyone who took the oath and who "knowingly and wilfully becomes or remains a member of the communist party of the United States or its successors or any of its subordinate organizations," or "any other organization," having for one of its purposes the overthrow of the government of Arizona by force or violence, where the employee had knowledge of the unlawful purpose. The failure of the statutory gloss to require further that the prosecution and expulsion be conditioned upon a showing that the employee was an active member *with the specific intent of assisting in achieving the unlawful ends of an organization which had as one of its purposes the violent overthrow of the government* rendered the gloss invalid.

■ The decision is, of course, ample justification for the Attorney General of Maryland to have eliminated the portion of the Maryland oath approved in *Gerende* that a person is not knowingly a member of a subversive organization, and to that extent overruled the decision in *Gerende*. The majority opinion makes no

5. "It has been contended that the crucial section of Maryland's Ober Act, that which is identical to the Washington Act, was not before the Court in Gerende, but a review of the record in that case conclusively demonstrates to the contrary. Further, while the Gerende opinion was stated with a qualification, the fact remains that the Court approved the judgment of the Maryland court and rejected the argument that the Act was unconstitutionally vague." Id. 377 U.S. at p. 382, 84 S.Ct. at p. 1328.

6. "The contention that the Court found no constitutional difficulties with identical definitions of subversive person and subversive organizations in Gerende v. Board of Supervisors, 341 U.S. 56, 71 S. Ct. 565, 95 L.Ed. 745, is without merit. It was forcefully argued in Gerende that candidates for state office in Maryland were required to take an oath incorporating a section of the Maryland statutes defining subversive person and organization in the identical terms challenged herein. But the Court rejected this interpretation of Maryland law and did not pass upon or approve the definitions of subversive person and organization contained in the Maryland statutes. Instead it made very clear that the judgment below was affirmed solely on the basis that the ac-

tual oath to be imposed under Maryland law requires one to swear that he is not a person who is engaged " 'in the attempt to overthrow the government *by force or violence*,' and that he is not knowingly a member of an organization engaged in such an attempt." Id., 341 U.S., at 56–57, 71 S.Ct., at 565, 95 L.Ed. at 746 (emphasis in original). The Court said: "At the bar of this Court the Attorney General of the State of Maryland declared that he would advise the proper authorities to accept an affidavit in these terms as satisfying in full the statutory requirement. Under these circumstances and with this understanding, the judgment of the Maryland Court of Appeals is Affirmed. Id. at 57, 71 S.Ct., at 565, 95 L.Ed., at 746." Id., 377 U.S. at p. 368, 84 S.Ct. at 1321.

7. "I, (type or print name) do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution and laws of the State of Arizona; that I will bear true faith and allegiance to the same and defend them against all enemies, foreign and domestic and that I will faithfully and impartially discharge the duties of the office of (name of office) according to the best of my ability, so help me God (or so I do affirm)."

mention of *Gerende,* but we cannot read *Elfbrandt* as overruling *Gerende* to any greater extent, notwithstanding the inability of the dissenters to square the holding with the holding in *Gerende* and other cases. In short, in both of the decisions rendered after *Gerende* which have been pressed on us by plaintiff, we cannot find that the portion of the holding in *Gerende* which permits an oath that a person is not engaged in one way or another in the attempt to overthrow the government by force or violence has been impaired.

 Plaintiff argues that "in one way or another" is a phrase unconstitutionally vague, while defendants argue that "in one way or another" means "any way" and is linked to the word "attempt," so as to express the concept of specific intent, coupled with an overt act, to overthrow the government by force or violence. We need not choose between these arguments. It suffices to say that the phrase "in one way or another" was specifically approved in *Gerende;* we cannot find that it has been overruled; and it is our duty to apply the rules laid down by the Supreme Court and not to anticipate its possible future decisions.

 Plaintiff also argues that the oath sought to be exacted from him is not limited to the text stated in the opinion but, rather, extends to the full oath purportedly required by Article 85A. Alternatively, plaintiff argues that the Attorney General of Maryland is without authority to require only a portion of the oath required by Article 85A, but not all. The first portion of the argument rests upon the assertion that, in the certificate plaintiff was asked to execute, the reference to "Art. 85A, paragraph 13, Annotated Code of Maryland 1957" after the phrase "Required by law" means that

the certification following, which, on its face, is limited to engaging in one way or another in the attempt to overthrow the government by force or violence, embodies aspects of the oath prescribed by statute which are clearly invalid under the Supreme Court decisions. We are not persuaded. The other portion of the argument rests in part on Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), which is cited as indicating that only a state court of the State of Maryland may properly determine whether the full oath prescribed by Article 85A can be severed into its valid and invalid provisions, and that it is our duty to enjoin the oath in its entirety until a state court renders an appropriate judgment. This argument overlooks § 18 of Article 85A,[8] as clear an expression of severability as could be found. Moreover, as the chief legal officer of the State of Maryland, sworn to uphold the Constitution of the United States, as well as the Constitution and laws of the State of Maryland, Md. Constitution, Article I, § 6, the Attorney General acted properly within the scope of his authority in advising that those portions of the oath prescribed by Article 85A repugnant to decided cases of the Supreme Court of the United States should not be required of state employees, even in the absence of a specific court decree. We do not read the *Dombrowski* case as proscribing this conduct.

 We consider next plaintiff's argument that the oath is a bill of attainder and conclude that this contention is without merit. Loyalty oaths, as conditions precedent for public employment, if otherwise valid, are not invalid as bills of attainder. Garner v. Board of Public Works, 341 U.S. 716, 722, 71 S.Ct. 909, 95 L.Ed. 1317 (1951), held an oath of non-advocacy of violent overthrow of government required of municipal employees

8. "18. Severability.
"If any provision, phrase, or clause of this article or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions, phrases, or clauses or applications of this article which can be given effect without the invalid provision, phrase, or clause or application, and to this end the provisions, phrases and clauses of this article are declared to be severable."

not punishment and hence not a bill of attainder. Even Baggett v. Bullitt, supra, which condemned a loyalty oath as unconstitutionally vague, recognized the right to a state " * * * to take proper measures safeguarding the public service from disloyal conduct" (377 U.S. p. 379, 84 S.Ct. p. 1327). See also, American Communications Ass'n., CIO v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950); Adler v. Board of Education, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952); and Keyishian v. Board of Regents, 255 F.Supp. 981 (W.D. N.Y.1966), prob. jur. noted, 384 U.S. 998, 86 S.Ct. 1921, 16 L.Ed.2d 1012 (1966). Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958), is not to the contrary as the discussion of that case in Konigsberg v. State Bar of California, 366 U.S. 36, 53–56, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961), demonstrates.

Under existing law, we do not find the oath tendered to plaintiff invalid. We conclude that the complaint should be dismissed. The Clerk will enter an order to that effect.

SOBELOFF, Circuit Judge (concurring):

In joining my brethren in the disposition of this case I wish to add a brief statement of my reasons.

Whether the ritual of an oath or affirmation of loyalty, with or without sanctions for perjury, is a wise or effective means to the unquestionably legitimate end of protecting the state against subversion is not the issue before us. The question is the legality of the particular requirement demanded of the plaintiff, not its desirability.

I am inclined to agree with the plaintiff that the prescribed oath or statement is not to be judged in isolation, but in conjunction with the statute, for in the absence of a statute, there would be no authority for demanding any statement "under penalty of perjury." If it were not for Gerende v. Board of Supervisors,

341 U.S. 56, 71 S.Ct. 565 (1951), I would not lightly dismiss the plaintiff's argument that the reference to Article 85A, with its language about "subversive persons" and "subversive organizations," has a material bearing on the question before us, even though the oath itself does not expressly embody these terms. But the question comes to us freighted with a history, and the role of the statute in respect to the oath has been authoritatively interpreted.

In *Gerende* the Court upheld an oath which was in terms more comprehensive than the one before us. The Court embraced what it regarded as a restrictive interpretation of the Ober Law by the Maryland Court of Appeals, and upon that premise, and upon the condition that the Attorney General would advise the state authorities to accept as sufficient an affidavit in the narrow terms stipulated by the court, sustained the statute and the affidavit pursuant thereto. Whatever we might otherwise have thought, the Supreme Court has authoritatively decided that the broader language of the statute, which concededly would make it invalid, see Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316 (1964), is not controlling, but the less comprehensive language of the oath, as directed by the Attorney General, governs.

The plaintiff maintains first that the Supreme Court was mistaken in its analysis of the decision of the Maryland Court of Appeals in Shub v. Simpson, 196 Md. 177, 76 A.2d 332 (1950), and he further points to the logic employed in the later holdings in Baggett v. Bullitt, supra, and Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238 (1966), in support of his thesis that the Court must sooner or later disavow *Gerende*.

I acknowledge the force of the plaintiff's arguments as to the doubts concerning the present status of *Gerende* created by the recent decisions of the Supreme Court.[1] It may well be that on renewed

1. Keyishian v. Board of Regents, 255 F. Supp. 981 (W.D.N.Y. Jan. 5, 1966), prob. juris. noted, 384 U.S. 998, 86 S.Ct. 1921

(1966), decided prior to the Supreme Court's decision in *Elfbrandt*, may be distinguishable from the case at bar. There

consideration the Supreme Court would today hold the statute and the oath, even as recently further modified by the Attorney General, too vague to meet constitutional standards. However, it is one thing for a lower court to project an estimate of the future course of Supreme Court decisions on a point not theretofore specifically ruled upon; it is quite another to assume that an earlier decision of the Supreme Court on the very question now pending before the inferior tribunal has been overruled *sub silentio*. Judicial discipline requires that such assumptions be not too freely made, especially when the Supreme Court seems to have been careful to avoid an outright overruling. If *Gerende* is ripe for final dispatch, the task is for the Supreme Court, not a subordinate court.

Thus, despite the doubts engendered by the course of subsequent adjudications, I think the contentions made by the plaintiff here are more properly addressed to the Supreme Court. I am obliged, therefore, to join in today's order of dismissal rather than anticipate the abandonment of *Gerende*.

is no New York equivalent to the "loyalty pledge," subject to penalties for perjury, that is before us today. Furthermore, as the three-judge district court emphasized, New York State, in requiring of a prospective employee the assurance that he has complied with the laws under attack in *Keyishian*, affords the applicant an opportunity to be heard, should he be in doubt as to the coverage of the statutes.