Howard Joseph **WHITEHILL**, Jr.,
Plaintiff,

v.

Wilson **ELKINS** et al., Defendants.

**Civ. A. No. 17564.**

United States District Court
D. Maryland.

July 5, 1968.

Sanford Jay Rosen, Arnold M. Weiner, Elsbeth Levy Bothe, Joseph S. Kaufman, Lee M. Miller, Baltimore, Md., for plaintiff.

Francis B. Buch, Atty. Gen. of Maryland, Thomas A. Garland, Asst. Atty. Gen., Baltimore, Md., for defendants.

Before SOBELOFF and WINTER, Circuit Judges, and THOMSEN, Chief District Judge.

WINTER, Circuit Judge:

In Whitehill v. Elkins, 389 U.S. 54, 88 S.Ct. 184, 19 L.Ed.2d 228 (1967), the Supreme Court of the United States re-

versed our decision, reported at 258 F. Supp. 589 (D.Md.1966). The matter is now before us on the entry of a final decree.

The plaintiff asks for the entry of a decree, broad in scope, (a) declaring §§ 1, 11, 13 and 14 of Article 85A, 8A Annotated Code of Maryland (1964 Ed.), unconstitutional for being unduly broad, vague and indefinite, and in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States, (b) enjoining the defendants from enforcement of those provisions of Article 85A, (c) also declaring §§ 2(d), 3, 4, 5, 6, 9, 10, 11, 12, 13, 14, 15 and 16 unconstitutional, to the extent that they depend upon or make reference to the definition of "subversive person," (d) further declaring the provisions of Article 85A addressed to seditious activity against the government of the United States preempted by federal law, and (e) finally declaring Article 85A unconstitutional in its entirety, because it is an interwoven statute largely dependent upon the unconstitutional definitions found in § 1 thereof, and such provisions that do not directly refer to or make reference to § 1, or the other unconstitutional provisions, are not severable.

By contrast, the defendants ask us to enter a more limited decree, which would declare that the words "alter," "alteration" and "revolution" in the definition of "subversive organization" and "subversive person," § 1 of Article 85A, are unconstitutionally broad, as is the phrase "in one way or another" in the oath at issue in this case, but that the remaining provisions of § 1, § 13, and the other sections of Article 85A, may be severed and are constitutionally valid.

In briefs and in argument, the differences between the parties arise out of the effect to be given to § 18, Article 85A, which declares that the provisions of Article 85A are severable. In the majority opinion of the original decision we called attention to § 18, characterizing it "as clear an expression of severability as could be found." (258 F.Supp. 596). And we expressed the view that in representing to the Court in Gerende v. Board of Supervisors of Elections, 341 U.S. 56, 71 S.Ct. 565, 95 L.Ed. 745 (1951), that the oath actually required of state employees was something less than the oath prescribed by Article 85A, the Attorney General of Maryland acted properly within the scope of his duties and in accordance with § 18.

Significantly, the Supreme Court took notice of, but rejected, our concept.[1] More importantly, the Supreme Court held invalid the oath, at least in part, because of overbroad definitions in §§ 1 and 13, *not included in the oath actually required to be made.* The Court did so because it concluded that "since the authority to prescribe oaths is provided by § 11 of the Act and since it is in turn tied to §§ 1 and 13, we must consider the oath with reference to §§ 1 and 13, not in isolation." 389 U.S. at 56–57, 88 S.Ct. at 185.[2]

We read the majority opinion as a clear direction that we should declare invalid at least §§ 1, 11 and 13 of the Act. Since the Court initially declined to pass upon the validity of an oath drafted to eliminate the objectionable portions of §§ 1 and 13 and held that its validity must be measured by reference to all of the language of §§ 1 and 13, we believe that we would not be warranted in framing a

---

1. "It is, however, urged that § 18 of the Act which contains a severability clause makes it possible for the Maryland Attorney General and for us to separate the wheat from the chaff that may be in §§ 1 and 13. The District Court found merit in the point. 258 F.Supp., at 596. But our difficulty goes deeper. As we have said in like situations, the oath required must not be so vague and broad as to make men of common intel-

ligence speculate at their peril on its meaning. * * * And so we are faced with the kind of problem which we thought we had avoided in *Gerende.*" 389 U.S., at 58–59, 88 S.Ct., at 186.

2. The Court also held, assuming arguendo that the validity of the oath may be considered separately from §§ 1 and 13, that the phrase "in one way or another," contained therein, was unconstitutionally broad.

decree to delete from §§ 1 and 13 the parts clearly invalid so as to preserve the rest for test in later litigation. And it necessarily follows that § 14 should also be declared invalid. Since plaintiff cannot be required to make the oath that he is not a "subversive person" as a condition precedent to his employment by the University of Maryland, clearly he could not be discharged, once employed, on reasonable belief that he was a "subversive person."

Our view of the effect of the decision of the Supreme Court in this case is reinforced by another consideration.

The definitions of "subversive person" and "subversive organization" are set forth in the margin.[3] If we were to attempt to sever those portions which are still presumptively valid, it would be our duty to take into consideration not only the decision of the Supreme Court in this case, but its decisions in all other relevant cases as well. In the Supreme Court's opinion in this case we are told specifically that "alter," "alteration" and "revolution," because they may include peaceful change, are unconstitutionally vague. Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966), and United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967), stand for the proposition that the membership clause of both definitions is invalid because it is not restricted to those who are *knowing* members of a subversive organization and who have the *specific intent* to further the illegal purpose of the organization—deficiencies which

the Supreme Court has found are not remedied by Maryland judicial gloss. Whitehill v. Elkins, 389 U.S. at 60–61, 88 S.Ct. at 187. The clause "or advocates, abets, advises or teaches by any means any person to commit, attempt to commit, or aid in the commission of any act intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of" was declared invalid in Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961), and Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). *Cramp* may also be read to invalidate the phrase "aid in the commission," employed in the Maryland statute as applied to the affiant, although in *Cramp* the phrase was "aid * * * to the Communist Party" while in the case at bar the phrase is substantially "aid in violent revolution." Whether there is a difference in constitutional effect between aid in the commission of an unlawful act and aid to an unlawful organization remains undecided. The Maryland courts have had no occasion to define the scope of the concept embodied in the use of the word "aid" and we know of no legislative materials which would shed light on its intended meaning. Thus, we do not know if "aid" encompasses acts beyond those customarily proscribed in other areas of criminal law where punishment for accessories is provided. Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), reaffirmed that the "mere advocacy of abstract doctrine" of violent revolution without any

---

3. Art. 85A, § 1:

 * * * * *

" 'Subversive organization' means any organization which engages in or advocates, abets, advises, or teaches, or a purpose of which is to engage in or advocate, abet, advise, or teach activities intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the State of Maryland, or of any political subdivision of either of them, by revolution, force, or violence."

 * * * * *

" 'Subversive person' means any person who commits, attempts to commit, or aids in the commission, or advocates, abets, advises or teaches by any means any person to commit, attempt to commit, or aid in the commission of any act intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States, or of the State of Maryland, or any political subdivision of either of them, by revolution, force, or violence; or who is a member of a subversive organization or a foreign subversive organization."

attempt to indoctrinate others or to incite others to action in furtherance of unlawful aims, as well as "teaching and advising" the same, cannot be a valid ground for discharge from public employment, because of invalid overbreadth of these words. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), characterized Baggett v. Bullitt, supra, as holding invalid the Washington definition of "subversive organization," which was substantially identical to Maryland's, but in neither *Dombrowski* nor *Baggett* was severability raised.

When all of these cases are considered together and their holdings (including the broad reading of the holding in *Cramp)* applied to the definitions before us, all that would appear to remain presumptively valid is that " 'Subversive person' means any person who commits, or attempts to commit, any act intended to overthrow or destroy the constitutional form of the government of the United States, or of the State of Maryland, or any political subdivision of them, by force or violence."

 In a case of this type we look to state rules of severability to arrive at our decision. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). The principal Maryland cases relating to severability are Heubeck v. City of Baltimore, 205 Md. 203, 107 A.2d 99 (1954); City of Baltimore v. A. S. Abell Co., 218 Md. 273, 145 A.2d 111 (1958); and National Can Corp. v. State Tax Comm., 220 Md. 418, 153 A.2d 287 (1959). These cases establish the general proposition that where, as here, there is a severability clause, a presumption is raised that the valid portions of the Act were intended to exist alone.[4] However, the severability clause at best creates only a presumption; " * * * it is merely an aid to interpretation." City of Baltimore v. A. S. Abell Co., supra, 218

Md. 290, 145 A.2d 120. While it must be afforded a reasonable interpretation, it "does not operate to save provisions which clearly would not have been enacted into law except upon the assumption that the entire act was valid. The true test of severability is the effectiveness of an act to carry out, without its invalid portions, the original legislative intent in enacting it * * *." Ibid.

Considering the large portions of the definitions contained in § 1 which cannot clear constitutional scrutiny and the small portion which apparently does, we cannot say that the General Assembly would have enacted §§ 1, 11, 13 and 14 on the very limited basis on which they may be valid. An oath that one is not presently committing or attempting to commit an act intended to overthrow a government by force or violence is relatively meaningless. An oath as a device to accomplish the evident objective of the Act would have substance only if membership in subversive organizations and acts of advocacy, advising, teaching and aiding others to achieve unlawful objectives could be validly included. Maryland does not require a prospective employee to make an affidavit that he will not engage in any crime other than conduct proscribed by Article 85A; indeed, in its classified service, Maryland provides that a person *convicted* of crime is not necessarily disqualified from appointment. 5 Ann.Code of Md. (1964 Ed.) Art. 64A, § 19. Maryland does not provide for the discharge of any employee because there are "reasonable grounds * * * to believe" that he has committed any crime other than a violation of Article 85A; in the case of other crimes, discharge may not be effected "except for cause" as defined by the State Commissioner of Personnel, 5 Ann.Code of Md. (1967 Cum.Supp.) Art. 64A, § 33. "Cause" has been judicially treated as

---

4. The *Abell* case also establishes the converse proposition that in the absence of a severability clause, a presumption is raised that the legislature intends the Act to be effective as an entirety, so that

if a portion thereof is invalid, the whole Act fails. But cf., Schneider v. Duer, 170 Md. 326, 184 A. 914, 919; Heubeck v. City of Baltimore, supra.

*proof* of conduct affecting or concerning the ability or fitness of the employee to perform the duties entrusted to him. Street Commissioners of Hagerstown v. Williams, 96 Md. 232, 53 A. 923 (1903); Reddick v. State Commissioner of Personnel, 213 Md. 195, 131 A.2d 464 (1957). We cannot say, therefore, that Maryland would have imposed such requirements on the limited basis that is left. In short, so much of the original Maryland scheme has been frustrated that we think the presumption of severability has been destroyed. If Maryland wants legislation on the limited basis which is permissible, we think that the General Assembly should enact it.

This is not to say, however, that plaintiff is entitled in this proceeding to a declaration that Article 85A is invalid in its entirety. Plaintiff has not alleged that he is a taxpayer. Even if he did, he has not shown any special interest in having declared invalid the portions of Article 85A beyond §§ 1, 11, 13 and 14, or that they have any direct application to him. See Flast v. Cohen, 391 U.S. ——, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Preemption may well have occurred in regard to those portions of Article 85A which relate to seditious activity against the government of the United States in the light of Commonwealth of Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956), but plaintiff's relation to those provisions is not shown.

We conclude, therefore, to enter a decree declaring invalid the definitions of "subversive person," "subversive organization" and "foreign subversive organization" [5] contained in § 1, and all of §§ 11, 13 and 14, and enjoining enforcement of §§ 11, 13 and 14. We, of course, express no view on the validity of their counterparts should they be reenacted with properly drawn definitions.

Counsel may present an appropriate decree.

5. A "foreign subversive organization," as defined by § 1 of the Act, is a "subversive organization" which is "directed, dominated or controlled directly or indirectly by a foreign government." A "subversive person," *inter alia*, is one who is a member of a "foreign subversive organization" as well as one who is a member of a "subversive organization."