The Honorable Anne M. Gorsuch State Representative Committee on Legal Services 30 State Capitol Building Denver, Colorado 80203
Dear Ms. Gorsuch,
This opinion is in response to your letter of July 10, 1980, in which you requested my opinion regarding the above-outlined subjects.
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents three questions:
1. Were the time limitations placed on the rules of the Personnel Board by House bill 1143, (1980 Session), and by sections 1 through 6 of ch. 578, 1977 Session Laws of Colorado, pp. 1942-1945, ("sections 1 through 6 of ch. 578" or "Senate Bill 548") valid exercises of the power of the general assembly?
 My conclusion is that House Bill 1143 was a valid exercise of the authority of the general assembly. The repeal provisions of sections 1 through 6 of ch. 578, although a valid exercise of the legislature's authority, did not operate as a repeal of rules as was intended because the designated rules were no longer in existence at the scheduled time of repeal.
2. What are the sources of the rule-making authority of the State Personnel Board, both generally and with respect to the "three-plus-three" rules?
 The board is empowered to promulgate rules under the Colorado Constitution, article XII, section 14(3), and board rules must conform to the federal constitution and laws as well as to the Colorado Constitution. The "three-plus-three" rules are in compliance with the law as required, and are a valid exercise of the board's rule making authority.
3. May the Attorney General of Colorado opine on the constitutionality of state statutes and, if so, under what circumstances may the attorney general advise an agency to act contrary to a statute which the attorney general concludes is unconstitutional?
 As the legal advisor to a state agency and as an elected, constitutional officer who has sworn to uphold both the state and federal constitutions, the attorney general may respond to an agency's request for his opinion on the constitutionality of a statute. The formulation of the opinion is the attorney general's sole responsibility and must be discharged to the best of his ability. If, after according the normal presumption of constitutionality to a statute, the attorney general concludes that statute is unconstitutional, he should so advise the agency.
 It is also my opinion that what action an agency may be advised to take when it is confronted with an attorney general's opinion that a statute is unconstitutional depends on the facts of each case.
ANALYSIS
Time Limitations
House Bill 1143 (1980 Session) which provides for the extension of certain rules of the Department of Personnel while failing to extend the life of other such rules, including the "three-plus-three" rules, is a valid exercise of the power of the general assembly. Because the legislation may be interpreted as a mere time limitation on the existence of the rules, which may implicitly require board reassessment of the rules, the statute is within the power of the general assembly as granted by the Colorado Constitution, article V, section 1 (see attorney general's opinion on affirmative action rules of January 29, 1980, attached hereto and incorporated by reference.) The legislation does not preclude the board from exercising its constitutional rule-making responsibilities, since it does not attempt to prevent the board from reenacting the rules or any part of them. Thus, the board's reenactment of certain rules on May 13, 1980, is valid.
You also inquire about the effect of the repeal provisions in sections 1 through 6, Chapter 578, 1977 Session Laws of Colorado, ("Senate Bill 548") effective January 1, 1977. Sections 1 through 6, which are not codified, made certain substantive changes in the "three-plus-three" affirmative action rules that had been adopted by the Personnel Board on December 10, 1976 and provided that the "three-plus-three" rules were to be repealed effective January 1, 1980.
In the spring of 1978, the Personnel Board responded to Senate Bill 548 by reexamining the "three-plus-three" rules. After a duly noticed public hearing held April 24, 1978 pursuant to the Administrative Procedure Act, the board adopted amended "three-plus-three" rules. The new rules were effective on June 1, 1978 and had no expiration date.
With respect to the repeal provisions of Senate bill 548, it again is my position that the provisions are valid only if construed as time span limitations which may require the board to reassess its rules but do not limit its substantive rule-making authority. As I stated in my January 29, 1980 opinion, the board is under a special obligation with respect to affirmative action and if the "three-plus-three" rules were allowed to expire, the board would appear to be under constitutional mandate to reenact rules or be in dereliction of its constitutional duties.
Here, the purpose of time limitations has been served because the rules have been reconsidered by the board and the board has acted within its substantive power by reenacting the rules without expiration dates. As of January 1, 1980, the rules addressed in Senate bill 548 were no longer in existence and could not be repealed. Thus, the repeal provisions of Senate bill 548 had no effect.
Authority of Personnel Board to Enact Rules
The State Personnel Board is empowered to make rules by the Colorado Constitution, article XII, section 14(3). The board is permitted to promulgate rules to implement the provisions of sections 13, 14 and 15 of article XII of the Colorado Constitution. Further, rule-making of the State Personnel Board, as well as other state agencies and the general assembly, is subject to and governed by the federal constitution and laws and other relevant provisions of the Colorado Constitution.
The source of the Personnel Board's rule-making authority to promulgate the rules known as the "three-plus-three" rules has been fully discussed in my opinion of January 29, 1980. The Personnel Board was in compliance with the United States Constitution and the merit principles contained in section 13(1) of article XII of the state constitution when it adopted the "three-plus-three" rules.
Article XII, section 13(1) of the Colorado Constitution states that appointments shall be made according to merit and fitness to be ascertained by competitive tests of competence without regard to race, creed, or color or political affiliation. The commitment to the merit system principles is also made by the legislature in C.R.S. 1973, 24-50-111. Colorado law thus conforms to the commands of the fourteenth amendment to the United States Constitution to extend equal protection of the laws to all.
Section 13(5) of article XII requires that the person appointed to any position under the personnel system shall be one of three persons ranking highest on the eligible list for such position, or such lesser number as qualify, as determined from competitive tests of competence. Because the tests used by the Personnel Department have not been completely validated, the tests are not without regard to race, creed, color and political affiliation. Therefore, the use of "three-plus-three" serves to compensate for the tests which have not been validated and to safeguard against the state's administration of 13(5) being out of compliance with the United States Constitution, federal laws, the Colorado Constitution, and Colorado laws.
Authority of Attorney General
In part III of your letter you raise two questions concerning the authority of the attorney general to issue an opinion concluding that a statute is unconstitutional. Specifically, you ask whether the attorney general may issue such an opinion and you ask under what circumstances the attorney general can advise an agency to act contrary to a statute.
Your questions were raised in the context of my January 29, 1980 opinion where, at the request of the Personnel Board, I analyzed the effect of two statutes on rules issued by the board. I expressed my opinion that C.R.S. 1973, 24-50-141 (Supp. 1978) conflicted with the state and federal constitutions. As is apparent from my January 29, 1980 opinion, it is my view that the attorney general may issue an opinion that a statute is unconstitutional.
The attorney general's duty to render his opinion on the constitutionality of a statute has two bases: (1) the attorney general's responsibility as legal adviser to the executive department and agencies thereof; and (2) the attorney general's sworn oath to uphold the Constitution of the State of Colorado and the Constitution of the United States.
Under C.R.S. 1973, 24-31-101(a), as amended, the attorney general is "the legal counsel and adviser of each department, division, board, bureau, and agency of state government other than the legislative branch." Moreover, as the supreme court stated inIn Re House Bill 107, 21 Colo. 32, 36 P. 431 (1895), the attorney general is the natural as well as the statutory adviser to the executive and legislative branches. In that case, the court held that the attorney general's opinion should be asked on the constitutionality of a bill and, only as a last resort, should the legislature send interrogatories to the supreme court. Although the attorney general's relationship to the legislature has been changed by amendment to C.R.S. 1973,24-31-101(a), his relationship to the executive branch is unchanged.
As the legal adviser to an agency, the attorney general has the ethical duty, which applies to every lawyer, to further the interests of his client by giving "his professional opinion as to what he believes would likely be the ultimate decision of the courts on the matter at hand and by informing his client of the practical effect of such decision." See Ethical Consideration 7-5, Code of Professional Responsibility, Colo. R. Civ. P. In this instance, the attorney general's client is an agency of the executive branch; it is not the legislature.
To fully appreciate the role of legal adviser, it must be understood that an attorney's roles as adviser and advocate are essentially different. In adopting Ethical Consideration 7-3, Code of Professional Responsibility, supra, the Colorado Supreme Court recognizes:
 In asserting a position on behalf of his client, an advocate for the most part deals with past conduct and must take the facts as he finds them. By contrast, a lawyer serving as advisor primarily assists his client in determining the course of future conduct and relationships. In serving a client as advisor, a lawyer in appropriate circumstances should give his professional opinion as to what the ultimate decision of the courts would likely be as to the applicable law.
In this case it was my opinion that the courts would find the subject statute unconstitutional.
Further, as the Washington Supreme Court stated, the term "legal adviser" in the attorney general's statutes contemplates "something more than a mere passive role in the formulation and implementation of state governmental policies and practices."Young Americans for Freedom v. Gorton, 91 Wn.2d 204,588 P.2d 195, n. 2 (1978) (upholding the state attorney general's authority to file an amicus brief in a United States Supreme Court case).
Rather than finding the existence of a constitutional question to be a bar to issuance of an attorney general's opinion, the New Hampshire Supreme Court held that the attorney general was required to give the Governor his opinion on the constitutionality of an income tax imposed by Maine on New Hampshire citizens. Opinion of the Justices, 110 N.H. 26,259 A.2d 660 (1969). The New Hampshire attorney general had declined to give his opinion on the question and the court found that he had a duty to render an opinion because a statute required the attorney general, upon request of the Governor, to appear and defend the state in any proceeding. Compare
C.R.S. 1973, 24-31-101(b), as amended. The New Hampshire court emphasized that, although he was required to render an opinion, the attorney general had the sole responsibility for forming his opinion.
In addition to his status as legal adviser, the attorney general's oath of office is frequently cited by courts as permitting him to challenge the constitutionality of a state statute. As an elected, constitutional officer of the state, the attorney general must take an oath to support the constitutions of Colorado and the United States. See Colo. Const. Art. XII, § 8. That duty to uphold the constitution requires the attorney general to defend the constitution "from attacks in the form of legislation as well as from attacks by way of lawsuits by other persons against state officers or agencies."Commonwealth v. Paxton, 516 S.W.2d 865, 867-68
(Ky.App. 1974).
In Delchamps, Inc. v. Alabama State Milk Control Board,324 F. Supp. 117 (M.D. Ala. 1971) (three judge court), the Alabama attorney general was permitted to realign as a plaintiff attacking the constitutionality of the State Milk Control Act. The state milk board argued that the attorney general could not take that position because the constitutionality of the statute had been upheld by the state supreme court and the attorney general had a duty to uphold the enactments of the legislature. The court, however, noting that the Alabama constitution gave the attorney general such duties as may be prescribed by law, stated
 it is also true that the Attorney General of Alabama — as other attorney generals in the various states in this Union — is required by his oath to support and defend the Constitution of the United States of America. When and if there is a conflict between the state law and the federal law in areas where the federal law is applicable, the Supremacy Clause controls. Thus, if the Attorney General for the State of Alabama is of the opinion that certain enactments of the Alabama Legislature are clearly violative of the Constitution of the United States, this Court does not conceive that he is under any duty to attempt to defend such legislative enactments.
324 F. Supp. at 118.
In another case, the Maryland attorney general advised state officials that only part of a loyalty oath should be given to state employees because the other portions were unconstitutional. In response to the argument that the attorney general lacked authority to limit the oath, the court stated:
 Moreover, as the chief legal officer of the State of Maryland, sworn to uphold the Constitution and the laws of the State of Maryland, Md. Constitution, Article I, § 6, the Attorney General acted properly within the scope of his authority in advising that those portions of the oath prescribed by Article 85A repugnant to decided cases of the Supreme Court of the United States should not be required of state employees even in absence of a specific court decree.
Whitehall v. Elkins, 258 F. Supp. 589, 596 (D. Md. 1966) (three judge court), rev'd on other grounds,389 U.S. 54 (1967). See also Pan American Petroleum Corporationv. Board of Tax-Roll Corrections, 510 P.2d 680 (Okla. 1973) (Oklahoma attorney general opined that certain statutory provisions exempting property from taxation were unconstitutional).
I am aware of one recent intermediate appellate court decision in Pennsylvania which stated in dictum that the attorney general could not unilaterally implement his opinion that a statute was unconstitutional. Hetherington v. McHale,102 Pa. Cmwlth. 501, 311 A.2d 162 (1973). The appellate court decision, however, was reversed on the merits by the Pennsylvania Supreme Court in Hetherington v. McHale, 458 Pa. 479,329 A.2d 150 (1974), without reaching that issue.
My review of Colorado attorney general's opinions has disclosed that inconsistent positions have been taken on this issue by prior attorneys general. Three examples illustrate this point. In an opinion dated August 3, 1943, Attorney General Ireland stated that it was not within the province of the attorney general to declare an act of the legislature unconstitutional, even though he may doubt its validity. Subsequently, in an opinion dated February 21, 1949, Attorney General Metzger gave his opinion that two statutory provisions were unconstitutional. Attorney General Dunbar, in an opinion dated February 4, 1952, declined to give an opinion on the constitutionality of a statute on the ground that he was bound to follow the statute.
The Dunbar opinion cites as its supporting authority the case ofPeople v. Leddy, 53 Colo. 109, 123 P. 824 (1912). That case, however, did not concern an attorney general's opinion. Rather, it involved the refusal of the state auditor to issue a state warrant. The court expressly declined to decide whether the auditor properly could raise the constitutionality of an act by refusing to comply with it, i.e., by refusing to issue the warrant. 53 Colo. at 112, 123 P. at 825. Hence,Leddy is not dispositive.
Since the Dunbar opinion and other similar opinions were written, there have been important changes in our understanding of the role of an attorney (including an attorney general) and in court decisions concerning the liability of public officials. When sovereign immunity cloaked all actions of a state official, there was little need for an attorney general to advise an agency or official on how to act in light of a statute which may be unconstitutional. Now that the shield of sovereign immunity has been largely removed and federal civil rights actions against state officials have become commonplace, I do not believe that an attorney general is free to decline to answer a question solely because it involves the constitutionality of a statute.
Thus, it is my opinion that, as the legal adviser to a state agency and as one who has sworn to uphold both the state and federal constitutions, the attorney general may respond to an agency's request for his opinion on the constitutionality of a statute. The formulation of the opinion is the attorney general's sole responsibility and must be discharged to the best of his ability. If, after according the normal presumption of constitutionality to a statute, the attorney general concludes that statute is unconstitutional, he should so advise the agency.
Assuming that the attorney general can issue an opinion expressing the view that a statute is unconstitutional, you also inquire under what circumstances the agency can be advised to disregard or act contrary to that statute. In my opinion, the advice given to an agency confronted with an attorney general's opinion that a statute is unconstitutional depends on the facts of each case.
In the February 21, 1949 attorney general's opinion cited above, for example, the attorney general advised that racing commission funds should be deposited in the general fund when the statutory provisions (which he opined were unconstitutional) permitted the commission to hold and disperse the funds. In Whitehall v.Evans, supra, the attorney general advised the state officials to disregard part of the state employees' loyalty oath. In Pan American Petroleum Corp. v. Board of Tax-RollCorrections, supra, the tax assessor followed the attorney general's opinion and began assessing property which the statute in question exempted. The Oklahoma Supreme Court upheld the tax assessor's actions pending the outcome of a declaratory judgment action, saying it was the duty of the assessor to follow the attorney general's opinion "until relieved of such duty by a court of competent jurisdiction or until this court should hold otherwise." 570 P.2d at 681.
In some cases, it may be appropriate for the agency to seek in court a declaratory judgment of the statute's constitutionality.See Hessick v. Moynihan, 83 Colo. 43,262 P. 907 (1927) (declaratory judgment action by State Corrections Board members). See also Board of Education v. Allen,392 U.S. 236 (1968); Pan American Petroleum Corp. v. Boardof Tax-Roll Corrections, supra. But seeAmerican Metal Climax, Inc. v. Butler, 188 Colo. 116,536 P.2d 951 (1975) (State Compensation Fund lacked standing to challenge statute).
In the case which prompted your inquiry, I advised the Personnel Board that its "three-plus-three" rules remained in effect. I gave that advice because of my concern that retraction by the board of the only affirmative action strategy applicable to the Colorado personnel system, without a credible finding that discrimination and the effects thereof no longer exist, might expose the board to legal liability. As I discussed in my January 29, 1980 opinion, discrimination in the state personnel system, the existence of which has been found by the board and confirmed by the legislature, cannot go unremedied. I have also advised the board to reexamine the personnel system to determine if discrimination continues and, if it does, to fashion and recommend appropriate remedies. As the letter from the Personnel Board to you dated July 16, 1980 indicates, the board is pursuing this course of action.
As this discussion suggests, it is not possible to generalize about what advice should be given to agencies or officials who must deal with a statute which, in the attorney general's opinion, is unconstitutional. Each situation must be governed by its individual facts and circumstances. In the case of the "three-plus-three" rules involving important individual civil rights and difficult questions of official and individual liability, I believe my advice to the board was appropriate.
SUMMARY
To briefly summarize my opinion, H.B. 1143 placed valid time limitations on designated Personnel Board rules. The repeal provisions in sections 1 through 6 of ch. 578, 1977 Session Laws of Colorado, although a valid exercise of power by the general assembly, did not operate as a repeal of designated rules as was intended because those rules were no longer in existence. The Personnel Board must promulgate rules in accordance with the federal and state constitutions, and law, and the "three-plus-three" rules do in fact conform to these. The attorney general may give his opinion on the constitutionality of a statute and may advise a state agency to take appropriate actions in light of his opinion and the facts of the case.
Very truly yours
 J.D. MacFARLANE Attorney General
ATTORNEYS GENERAL DISCRIMINATION LEGISLATURE RULES AND REGULATIONS EMPLOYMENT
S.B. 548 (1977)
C.R.S. 1973, 24-4-108
C.R.S. 1973, 24-50-141
Colo. Const. art. XII, § 14(3), 13(1), 13(5)
LAW, DEPARTMENT OF LEGISLATIVE BRANCH Legal Services Committee PERSONNEL, DEPT. OF State Personnel Bd.
(1) Effect of legislative time limitations on personnel rules; (2) Authority of Personnel Board to promulgate rules; and (3) Authority of the attorney general respecting unconstitutional statutes